FINANCIAL ACCEPTANCE CORPORATION vs. JOHN T.
GARVEY.

Essex.    May 19, 1978. — October 6, 1978.

Present: KEVILLE, ARMSTRONG, & BROWN, JJ.

Mortgage, Real estate: what is secured, discharge, dragnet clause, pri-
    ority. Negotiable Instrument, Renewal note. Unjust Enrichment.
    Practice, Civil, Parties.

In an action by the holder of a mortgage seeking a declaration that a
    prior mortgage on the same property was null and void, there was
    sufficient evidence to warrant findings that the intent of the parties
    to the prior mortgage was to secure not only notes outstanding at
    the time the mortgage was given but also the future indebtedness
    of the mortgagor to the mortgagee, that the plaintiff, as the person-
    al accountant of the mortgagor, was aware of the prior mortgage,
    and that to set aside the prior mortgage would result in unjust
    enrichment for the plaintiff while unfairly harming the holder of
    the prior mortgage. [613–616]
A provision in a mortgage agreement that the mortgage was "to se-
    cure the payment of all other indebtedness of the Mortgagor to the
    Mortgagee hereafter arising, as provided in the note or notes given
    therefor" did not preclude a finding that subsequent notes on which
    the mortgagor was an endorser rather than the maker were intend-
    ed to be secured by the mortgage. [616–617]
G. L. c. 183, § 28A, deals only with loans by a mortgagee to the mortga-
    gor which might otherwise not be secured by the terms of the
    mortgage and does not limit the amount secured by its terms. [617]
In an action by the holder of a mortgage seeking a declaration that a
    prior mortgage was null and void, the plaintiff had no standing to
    claim that under G. L. c. 172 the taking of the prior mortgage,
    which was a third mortgage, by a trust company was ultra vires.
    [617–618]

CIVIL ACTION commenced in the Probate Court for the
county of Essex on June 10, 1975.

The case was heard by *Pettoruto*, J., on a master's report.

*Nicholas J. Decoulos* for the plaintiff.

*Mark Lichtenstein* (*Steven E. Murra* with him) for the defendant.

BROWN, J. This action was brought by the holder of a mortgage seeking a declaration that a prior mortgage on the same property is null and void and an injunction against foreclosure by the assignee of that prior mortgage. The case was tried before a master. A Probate Court judge entered a judgment favorable to the defendant on the master's report. The plaintiff appeals.

The mortgagor, Joseph Mass (Joseph), borrowed $420,000 from Coolidge Bank and Trust Company (bank) on August 28, 1968, and executed a demand promissory note individually and as president of Alfalfa Farms, Inc., a Massachusetts corporation. Joseph borrowed an additional $100,000 from the bank on February 12, 1970, and gave another demand promissory note and a mortgage to the bank dated February 9, 1970, on three parcels of land. The mortgage, according to its terms, was "to secure payment of any and all obligations of the Mortgagor to the Mortgagee as evidenced by one or more existing notes, and also to secure the payment of all other indebtedness of the Mortgagor to the Mortgagee hereafter arising, as provided in the note or notes given therefor . . . ." This mortgage was a third mortgage which subsequently became a second mortgage.

In August, 1972, Joseph and the bank agreed to cancel the earlier notes, and new notes, dated August 17, 1972, October 16, 1972, and November 10, 1972, were executed by Joseph as trustee of National Ventures Trust and endorsed by both Joseph and his son Leonard individually. The master found that the "earlier notes had been stamped 'paid,' but no money had passed.[1] . . . Discharge

---

[1] The master indicated that "[w]hat had occurred were 'rollover' transactions, the renewing or rewriting in some form of continuing obligations, in which the bank had parted with $54,406.93 additional."

of the mortgage of the Alfalfa Farms property was not requested, nor was any discharge furnished." The master found from these transactions that the parties did not intend to discharge the mortgage.

On December 31, 1973, Joseph and Leonard Mass, as trustees of National Ventures Trust and individually, executed a promissory note to the plaintiff, Financial Acceptance Corporation (Financial), for $200,000. A mortgage, dated August 14, 1974, on the same property already mortgaged to the bank, was given to secure that note. The mortgage did not refer to the mortgage given to the bank, although it did refer to two other earlier mortgages. However, the master found that Christ DeCoulos, the sole stockholder of Financial, was the personal accountant for Joseph, that he prepared certain of the financial statements furnished to the bank prior to the loan transactions involved in this case, and that "[h]e was aware of the bank's mortgage ... and of the details of the transactions then and thereafter of [Joseph] and of National Ventures Trust with the bank."

The bank assigned its mortgage and the three notes to the defendant, John T. Garvey, on March 3, 1975, who then instituted foreclosure proceedings, precipitating this action. The plaintiff contends that the mortgage to the bank secured only the 1968 and 1970 notes and that as those notes were paid in 1972 this mortgage should be discharged.

As the evidence is not reported, the question to be decided is whether the facts found by the master, together with any inferences that may properly be drawn therefrom, support the judgment. *Silverman* v. *Silverman*, 5 Mass. App. Ct. 793 (1977). See *O'Brien* v. *Dwight*, 363 Mass. 256, 281–282 (1973). See generally *Bills* v. *Nunno*, 4 Mass. App. Ct. 279, 281–284 (1976), and cases cited.

The controversy in this case concerns the securing clause in the bank's mortgage, quoted above, a so called

"dragnet" clause. See *Exchange Trust Co.* v. *Hitchcock*, 249 Mass. 547, 549–550 (1924). The guiding principle in construction of a dragnet clause in a mortgage is the determination of the intent of the parties in view of the particular circumstances and the language employed in the mortgage. *Monroe County Bank* v. *Qualls*, 220 Ala. 499, 500 (1929). See also *Simons* v. *First Natl. Bank*, 93 N.Y. 269, 272 (1883). The master in this case found that the intent of the parties was to secure not only the earlier (1968 and 1970) notes but also the future indebtedness of Joseph to the bank. Specifically, he found that the notes of August 17, October 16, and November 10, 1972, were intended to be secured by the mortgage.

1. The plaintiff's principal argument is that dragnet clauses should be narrowly interpreted because of the danger that a broad interpretation will permit creditors to secure, by mortgage lien, debts which are unrelated to the original mortgage transaction. The plaintiff further contends that the August, October, and November notes in this case are unrelated to the earlier notes because the mortgagor was the maker of the earlier notes but is merely the endorser of the later notes, and that therefore the later notes are as matter of law not secured.

A principle which has been applied by a number of courts to aid in determining intent is that a dragnet clause will generally be construed to apply to "only debts of the general kind of those specifically secured" (*Monroe County Bank* v. *Qualls*, 220 Ala. at 500) or which bear a "sufficiently close relationship to the original indebtedness" (*National Bank* v. *General Mills, Inc.*, 283 F.2d 574, 578 [8th Cir. 1960]) that the consent of the debtor can be inferred. *Wong* v. *Beneficial Sav. & Loan Assn.*, 56 Cal. App.3d 286, 295–296 (1976). The California Court of Appeal in *Wong* v. *Beneficial Sav. & Loan Assn.*, *supra*, applied, in addition, a second test: whether the mortgagee relied on the security in making the loan. The purpose of these two tests is to determine what the reasonable expectations of the parties were.

Applying these principles to the facts in this case, we conclude that the notes given in 1972, although signed by Joseph as endorser rather than as maker, are of the same general kind as the original indebtedness, and bear a sufficiently close relationship to it because the master found that they were merely continuations of that indebtedness, with an additional amount being lent by the bank. Under Massachusetts law the renewal of a note in a different form does not operate to discharge a mortgage where the debt itself has not been paid. *Pomroy* v. *Rice*, 16 Pick. 22, 24 (1834). This rule applies even where the new note includes a new debt. *Cotton* v. *Atlas Natl. Bank*, 145 Mass. 43, 45 (1887). Moreover, the later additional amounts advanced were, according to the master's findings, all parts of the same course of business dealings between the bank and Joseph on the one hand and, on the other, between the bank and those entities with which he was intimately involved, Alfalfa Farms, Inc., and National Ventures Trust. Thus those amounts could reasonably be expected by the mortgagor as well as the mortgagee to be secured by the same mortgage. We think that the master's subsidiary findings amply support the conclusion that the later notes were intended to be secured.[2]

Even if the August, October, and November, 1972, notes had not been continuations of the original indebtedness and were not covered by the dragnet clause, the judgment is supportable by the master's finding of an intent to continue the mortgage as security for the new notes.[3] Where an oral agreement is made to continue a

[2] The plaintiff's reliance on *Gray* v. *McClellan*, 214 Mass. 92, 96–97 (1913), is misplaced. In *Gray* a mechanic's lien was held to have priority over future advances which the mortgagee was not bound to make. Not only does that case have no bearing on the present situation, but the loans by Financial were made after the loans by the bank in question here.

[3] The letter from Joseph to the bank dated October 12, 1972, provides additional evidence from which the master could (and did) find that the transactions in the fall of 1972 were not intended to discharge the mortgage in question here.

mortgage as security for a new indebtedness and money is advanced by the mortgagee in reliance thereon, Massachusetts courts refuse to discharge the mortgage on equitable principles. *Joslyn* v. *Wyman*, 5 Allen 62, 64 (1862). *Upton* v. *National Bank*, 120 Mass. 153, 156 (1876). The plaintiff argues that such an agreement may not be enforced against a subsequent mortgagee. See *ibid*. However, this rule applies only where the subsequent mortgagee has no knowledge of the facts. *Taft* v. *Stoddard*, 142 Mass. 545, 550 (1886). *Whitney* v. *Metallic Window Screen Mfg. Co.*, 187 Mass. 557, 560 (1905). Here the master found that Christ DeCoulos, the "sole principal actively involved in the affairs of Financial Acceptance Corporation," "was aware of the bank's mortgage when it was given and of the details of the transactions then and thereafter of [Joseph] and of National Ventures Trust with the bank." Therefore, such an agreement is enforceable against the plaintiff in this case.[4]

Furthermore, to set aside the mortgage in the present case would result in unjust enrichment for the plaintiff, which knew of the prior mortgage, while the defendant, who had relied on the mortgage security, would be unfairly harmed. In *Piea Realty Co., Inc.* v. *Papuzynski*, 342 Mass. 240 (1961), new notes in the same amount as certain prior notes replaced the prior notes, and the corresponding original mortgages were to have been discharged and replaced by newly executed mortgages securing the new notes. The prior notes were returned marked "paid"; however, the original mortgages were not

---

[4] The plaintiff also argues that intent must be determined as of the time of the mortgage and not at a later date. The master did determine intent as of that time, finding that "in executing the mortgage Joseph Mass as well as the bank intended that it should secure not only the earlier $420,000 note and new $100,000 note" but also later indebtedness. The master's additional finding of intent at the time the later notes were signed was also correct under the principle of law just stated above.

discharged, and the new mortgages, although executed, were not recorded. Though there was no formal agreement that the original mortgages would remain as security for the new notes, the court pointed out that the parties did not intend to change the security of the mortgagee. The court, therefore, to prevent unjust enrichment, held that the mortgagee was entitled to retain the original mortgages as security against the mortgagor and against a subsequent purchaser who took a conveyance subject to the original mortgages. *Id.* at 248. Even where a mortgage has been discharged by mistake, but a second mortgagee has knowledge of that mortgage and therefore is not harmed, the original mortgage will be reinstated as having priority in order to prevent unjust enrichment. *Provident Cooperative Bank* v. *James Talcott, Inc.*, 358 Mass. 180, 189 (1970).

We thus conclude that in the present case the intent of the parties as found by the master controls and further, in light of the bank's reliance on the mortgage as security and the plaintiff's knowledge of the existence of the prior mortgage, that equitable considerations, i.e., the possibility of unjust enrichment, require that the mortgage not be discharged but remain as security for the August, October, and November, 1972, notes. Cf. *Hampshire Natl. Bank* v. *Calkins*, 3 Mass. App. Ct. 697, 698 (1975).

2. The plaintiff also claims that the language in the mortgage, "all *other* indebtedness of the Mortgagor to the Mortgagee hereafter arising, as provided in the note or notes given therefor" (emphasis supplied), means only notes given by the mortgagor as maker and cannot be interpreted to cover notes on which Joseph is liable only as surety or endorser, and therefore that the master's finding that the later notes are secured by the mortgage is wrong as matter of law. However, as the clause in question does not specify by whom the notes are given, the language does not preclude the interpretation found by the master to reflect the parties' intent. The master was correct in considering both the language of the clause

and the circumstances in determining intent. *Simons* v. *First Natl. Bank, supra.*

3. The plaintiff makes a further claim that because the attorney for the bank stated in a letter dated February 9, 1972, that the mortgage "will serve as additional security for the commercial loan *made* to you by the Coolidge Bank" (emphasis supplied), the intention of the parties was to secure only the previous loan. However, the letter is susceptible also of a different interpretation — not that it was ruling out future loans, but that it showed no intent to exclude them. The plaintiff argues also that the master's subsidiary findings are mutually inconsistent because he found that "the primary motivation of the bank was to secure thereby the earlier $420,000 debt." However, as having a primary motivation is not inconsistent with also having secondary motivations (i.e., here, to secure future loans), the master's findings are not inherently inconsistent.

4. The plaintiff's argument that the intent of G. L. c. 183, § 28A, is to limit the amount which can be advanced by the mortgagee after the recording of the mortgage is inapposite. That statute provides that sums loaned by the mortgagee to the mortgagor for repairs, improvements, taxes, or liens on the property after the recording of the mortgage are secured with the same priority as the original indebtedness so long as the total of these sums and the balance due on the mortgage does not exceed the amount originally secured by the mortgage. As that statute, insofar as it limits the amount of indebtedness which is secured under a mortgage, "deals only with loans to the mortgagor which might otherwise not be secured by the terms of the mortgage" (*Bennett* v. *Worcester County Natl. Bank*, 350 Mass. 64, 68 [1966]), it, therefore, does not bar the transactions at issue here. *Ibid.*

5. The plaintiff also argues that under G. L. c. 172 the taking of a third mortgage by a trust company is ultra vires. The defendant contends, correctly, that the plain-

tiff has no standing to raise this issue, as such claims are reversed for assertion by public authority, in this case the Commissioner of Banks. *Shepard* v. *Finance Associates of Auburn, Inc.*, 366 Mass. 182, 188 (1974). *SDK Medical Computer Serv. Corp.* v. *Professional Operating Management Group, Inc.*, 371 Mass. 117, 120–121 (1976).

6. The plaintiff's final claim, that the court should have included the transcript as part of the record, is also without merit, as the order of reference to the master did not direct the master to file a transcript of the proceedings with his report. *Blakeley* v. *Pilgrim Packing Co.*, 4 Mass. App. Ct. 19, 20 n.2 (1976). *Michelson* v. *Aronson*, 4 Mass. App. Ct. 182, 187 (1976).

*Judgment affirmed.*