CONSUMERS SAVINGS BANK *vs.* IRVING J. COVEN
& another, individually and as trustees; GREGORY M.
BULLOCK & others,[1] third-party defendants.

Worcester. September 12, 1979. — November 1, 1979.

Present: HALE, C.J., GRANT, & KASS, JJ.

*Mortgage,* Conveyance subject to mortgage. *Contract,* Assumption
of mortgage, Parties. *Practice, Civil,* Summary judgment.
*Pleading, Civil,* Amendment. *Bankruptcy,* Trustee's rights.

In a third-party action by mortgagors seeking a judgment that the
defendants had undertaken to pay the plaintiffs' mortgage debt,
summary judgment was appropriate where there was nothing in
the deed to the defendants to indicate they were assuming the
mortgage debt and where there was nothing in the parties' af-
fidavits to support a claim that the defendants had orally or other-
wise undertaken any obligation for the mortgage note. [596-598]
The judge in a civil action did not abuse his discretion in denying a
motion to amend a third-party complaint where the case in chief
had been tried to a jury and a verdict returned and it did not ap-
pear that the amendment was the result of previously unknown in-
formation. [598-599]
A trustee in bankruptcy was not entitled to make a claim that the de-
fendants had agreed to pay the bankrupt parties' mortgage note
where the indebtedness on the note had been discharged in bank-
ruptcy. [599]

CIVIL ACTION commenced in the Superior Court on Oc-
tober 22, 1976.

Motions for summary judgment were heard by *Beau-
dreau,* J.

*Milton H. Raphaelson* for Irving J. Coven & another.
*John W. Connors,* pro se, intervener.
*Kevin T. Byrne* for William H. Matthews.

[1] Patricia Bullock, William H. Matthews, and Stanley S. Labovitz.

*William W. Hays* for the plaintiff.

*Robert Martin* for Stanley S. Labovitz.

KASS, J. In order to follow the proceedings which have come up on appeal it is helpful first to rehearse those facts which the parties do not dispute.

On October 22, 1971, Irving J. Coven and Jean Coven, as trustees of Maynard Gates Realty Trust and individually (the Covens), borrowed $70,000 from Consumers Savings Bank (the bank). The note which evidenced this loan was secured by a mortgage of premises at 4-6 Gates Street, Worcester. On or about August 1, 1973, the Covens sold the property to Gregory M. Bullock and Patricia A. Bullock (the Bullocks), subject to the mortgage and with an agreement by the Bullocks to pay the same which they evidenced by executing a guaranty to the bank for the then unpaid principal balance of the mortgage note. The Bullocks soon fell into default, a circumstance of which the bank advised the Covens in July, 1975. The Covens asked one William H. Matthews, a real estate broker, for his help in the matter. On July 30, 1975, Matthews and his partner, Stanley S. Labovitz, accepted a deed of the Gates Street premises from the Bullocks. That deed, which was drawn in the office of Labovitz, who was also a lawyer, recited a consideration of less than $100, contained no reference to the mortgage to the bank, and no undertaking by the grantees that they assumed and agreed to pay the mortgage.

Matthews and Labovitz made a further transfer of the property three and one-half months later to persons named Sattler and Simms by a deed which contained a recitation that the conveyance was "[s]ubject to mortgage to Consumers Savings Bank in the amount of $61,500 which the grantees assume to pay." Defaults in the original mortgage note were not cured, and the bank made entry on the premises and began foreclosure proceedings on January 28, 1976.

The foreclosure sale resulted in a deficiency, and the bank brought an action against the Covens and the Bul-

locks, which resulted in the entry of a judgment against the Covens in the amount of $26,364.44. The Covens appealed from that judgment but, at the time of the argument of the appeal, filed a motion to dismiss the appeal, which has been allowed.

There remain appeals, however, arising out of certain third party actions. The Covens filed a third party complaint against the Bullocks and against Matthews and Labovitz, asserting that these parties undertook to pay the mortgage note to the bank. As to the Bullocks, the claim became academic because it was discharged in bankruptcy on April 8, 1977. On June 13, 1977, his motion to intervene having been allowed, the trustee in bankruptcy of the Bullocks filed a cross claim against Matthews and Labovitz. Motions for summary judgment were allowed in favor of Matthews and Labovitz on the claim of the Covens and on the claim of the trustee in bankruptcy.

What we have left before us is an appeal by the Covens from the judgment entered against them on their third party claim against Matthews and Labovitz, and an appeal by the trustee in bankruptcy from the judgment against him on his claim against Matthews and Labovitz.

1. *The Covens' claim against Matthews and Labovitz.* It will be recalled that the deed from the Bullocks to Matthews and Labovitz was entirely silent on the subject of assumption of the mortgage by the grantee. That deed, therefore, falls within application of the familiar rule that where land is conveyed subject to a mortgage, the grantee does not, by acceptance of the deed alone, undertake to be bound by or to pay the mortgage debt. There must be words importing that the grantee will pay the debt to make him personally liable. *Shepherd* v. *May,* 115 U.S. 505, 510 (1885). *Fiske* v. *Tolman,* 124 Mass. 254, 256 (1878). *Phillips* v. *Vorenberg,* 259 Mass. 46, 70 (1927). Indeed, an obligation by a grantee to assume and agree to pay a mortgage debt is not lightly

to be implied where the deed contains no such recitation. *Brockton Sav. Bank* v. *Shapiro,* 311 Mass. 695, 699 (1942).

However, notwithstanding the absence of an assumption clause in the deed to Matthews and Labovitz, it was open to the Covens to overcome the force of the general rule through parol or other evidence tending to prove that Matthews and Labovitz had, in fact, assumed the mortgage debt which was secured by the property to which they had taken title. *Drury* v. *Tremont Improvement Co.,* 13 Allen 168, 171 (1866). *McRae* v. *Pope,* 311 Mass. 500, 504-505 (1942). Osborne, Mortgages, § 256 (2d ed. 1970).

When the judge below allowed the motion for summary judgment by Matthews and Labovitz, he relied on *Mellen* v. *Whipple,* 1 Gray 317, 321 (1854); i.e., the Covens were third party beneficiaries [2] of the alleged promise by Matthews and Labovitz to pay the mortgage debt to the bank, and, as such, had no right of action against the promisor. The case of *Choate, Hall & Stewart* v. *SCA Servs., Inc.,* 378 Mass. 535, 544-546 (1979), which has since overruled much of what was left of *Mellen* v. *Whipple,* had not yet been decided. Under the principles announced in *Choate, Hall & Stewart,* the Covens, as creditor beneficiaries, could maintain a cause of action against Matthews and Labovitz.

Summary judgment was properly granted, however, for other reasons. We have examined the affidavits of Matthews and of Labovitz, their depositions, and the affidavit of Gregory Bullock. Matthews and Labovitz assert unwaveringly that, indeed, they did not assume or intend to assume the mortgage indebtedness on the property. Bullock in his affidavit says no more than that he was told by Matthews he would be taken "off the hook,"

---

[2] They were creditor beneficiaries in the sense that the promise of a grantee who assumed the mortgage would be to pay the Covens' debt to the bank. Restatement of Contracts § 133(2) (1932).

that he did not have the services of a lawyer in connection with disposition of the property, and that he did not "know or dream" that Matthews and Labovitz were not assuming the mortgage to the bank. Bullock says, in effect, that he did not understand the transaction or the legal effect of the language in the deed. This lament does not rise to the level of a contradiction of the affidavits by Matthews and Labovitz or of their depositions in which they stated that they had not, orally or otherwise, undertaken to be personally responsible for the mortgage on the property. In the absence of a contest over a material issue of fact, allowance of the motion for summary judgment was appropriate. *Community Natl. Bank* v. *Dawes,* 369 Mass. 550, 555-556 (1976). Smith and Zobel, Rules Practice § 56.8 (1977).

Approximately seven months after their third party complaint against Matthews and Labovitz had been defeated by summary judgment, the Covens moved to amend their complaint so as to allege a promise by Matthews and Labovitz, running directly to the Covens, that the former would assume the mortgage to the bank. That motion was denied. The Covens could no longer amend their third party complaint as a matter of course since more than twenty days had run from the service of responsive pleadings. Mass.R.Civ.P. 15(a), 365 Mass. 761 (1974). To be sure, under rule 15(a), leave to amend "shall be freely given when justice so requires," but the court is not without discretion, 6 Wright & Miller, Federal Practice and Procedure § 1487 (1971), although the discretionary authority of a judge to deny a motion to amend a pleading is less than it was under our practice before adoption of the Rules of Civil Procedure. *Castellucci* v. *United States Fid. & Guar. Co.,* 372 Mass. 288, 289 (1977). In this case the motion to amend introduced a new theory after the case-in-chief, the bank's claim against Coven, had been tried to a jury and a verdict returned, and also after the court had dealt dispositively with a cross claim (of which more will be said below).

Counsel for the Covens had taken depositions of Matthews and of Labovitz (prior to the summary judgment hearing on the third-party complaint of the Covens against Matthews and Labovitz) almost a year earlier. The record does not suggest that in the interim the Covens had learned something new which caused their counsel to seek to amend their complaint against Matthews and Labovitz. Here, as in *Castellucci*, the judge could "give weight to the public interest in the efficient operation of the trial list and to the interests of other parties. . ..." *Castellucci* v. *United States Fid. & Guar. Co.* at 292. We do not think that the judge abused his discretion. See *Whelan* v. *New Mexico Western Oil & Gas Co.*, 226 F. 2d 156, 161 (10th Cir. 1955).

2. *The claim of the trustee in bankruptcy against Matthews and Labovitz.* The Bullocks received a discharge in bankruptcy on April 8, 1977, of their indebtedness to the bank. Assuming, arguendo, that Matthews and Labovitz, or either of them, had agreed to pay the Bullocks' indebtedness on the mortgage note, the purpose of such an agreement would have been to relieve the Bullocks from their liability on that note. When the Bullocks were, through the discharge in bankruptcy, relieved of that liability, they had no further claim against Matthews or Labovitz. See *Bloch* v. *Budish*, 279 Mass. 102, 106-107 (1932). The trustee in bankruptcy cannot transcend the Bullocks' rights against Matthews and Labovitz. The motions for summary judgment by Matthews and Labovitz were, therefore, correctly allowed.

*Judgments affirmed.*