**WHITE STAR CONFECTIONERY CO., INC.**

**v.**

**FIRST AGRICULTURAL BANK**

**No. 330**

District Court Division
Appellate Division, Western District
Trial Court of the
Commonwealth of Massachusetts

**April 1, 1982**

Cynthia A. Spinola, counsel for plaintiff.
John F. Rogers, counsel for defendant.

## DECISION AND ORDER

This cause came on to and was heard in the Appellate Division for the Western District sitting at Springfield upon Report from the Pittsfield Division and prejudicial error having been found.

It is hereby

ORDERED: That the Clerk of the Pittsfield Division make the following entry in said case on the docket of said Court, namely: order for summary judgment for Defendant, be and is hereby vacated. Case remanded to trial court for such further consideration and action consistent with this opinion.

Date April 1, 1982
**Bernard Lenhoff, Justice**
**William T. Walsh, Justice**
**Francis J. Larkin, Justice**
Opinion filed herewith.
**Robert E. Fein, Clerk**

## OPINION

**Lenhoff, J.** The plaintiff, a junior attaching creditor, seeks to recover from the defendant holder of a prior mortgage on property of the mortgagor, the sum of $1,037.32 that represents the remaining balance from the mortgagee's foreclosure sale whereby a total sum of $18,500.00 was realized; said plaintiff claiming that $17,462.68 thereof only was secured to the defendant by said mortgage.

The complaint of the plaintiff sets forth that the foreclosure sale took place on October 28, 1980 of a mortgage given to the defendant by one Riley M. Bates dated May 13, 1976 that was duly recorded; that said plaintiff attached the property of the said Riley M. Bates on January 11, 1980 in a civil action brought against him, said attachment being in the sum of $3,500.00; and, that said attachment was immediately junior to the mortgage aforesaid and superior to a recorded execution of the defendant levied on the Bates premises in the sum of $1,496.87 on February 8, 1980 resulting from a judgment obtained by the defendant against the said Bates.

The defendant denies the plaintiff's claim to the funds; neither admits nor denies the allegations relating to the attachment; and denies that said attachment is junior to the recorded execution.

Thereafter, the plaintiff filed a motion for summary judgment accompanied by an affidavit relating what has been alleged in its complaint; and, in addition thereto, disclosed that a default judgment was entered in its action on December 12, 1980 with execution issuing on January 9, 1981 in the sum of $3,662.41. Further, that the defendant has refused to pay the plaintiff the amount it claims from the mortgage foreclosure sale proceeds.

Responding to said motion, the defendant filed an affidavit with a supplement thereto, both of which reveal that on May 13, 1976, one Riley M. Bates who was indebted to the defendant, borrowed additional funds to purchase certain realty with Bates giving the defendant a first mortgage on his property situate at 85 Wahconah Street in Pittsfield; that on May 13, 1976 the mortgage, by its terms, was given to secure the repayment of the amount

loaned for the purchase of the premises and "also to secure the payment of any other liability of the Mortgagor to the Mortgagee, direct or indirect, joint or several, due or to become due, now existing or which may hereafter arise-----," said mortgage having been recorded on May 13, 1976; that on or about October 28, 1980, the defendant mortgagee sold the premises at a foreclosure sale for $18,500.00; that, at the time of said sale, the mortgagor was liable or indebted to the defendant in the additional sum of $1587.78 for a Mastercharge balance unrelated to the mortgagor's business and which had been reduced to judgment on or about February 8, 1980; and, that prior to the foreclosure sale, Riley Bates had offered to settle with the plaintiff for the sum of $1,700.00, but said offer was declined.

On June 9, 1981, the trial court ordered summary judgment for the defendant.

The plaintiff, claiming to be aggrieved by said order of summary judgment for the defendant, took appropriate action to have its grievance reported to this Appellate Division for determination.

The summary judgment procedural device (Dist./Mun. Cts. R. Civ. P. 56) is utilized to make possible the prompt disposition of controversies without trial where there is no genuine issue of material fact or if only a question of law is involved. **Community National Bank v. Dawes,** 369 Mass. 553 (1976). **Panesis v. Loyal Protective Life Ins., Co.,** 5 Mass. App. 66 (1977). Also, when summary judgment be appropriate, the Court may render same against the moving party. Dist/Mun. Cts. R. Civ. P. 56(c).

The general standard that an appellate court applies in reviewing the grant or denial of a summary judgment motion is the same as that employed by the trial court initially under Rule 56. **J. W. Cowles Construction v. T. & M. Equipment Corp.,** 1980 Mass. App. Div. Report 138, 139.

At this stage, these proceedings present the following issue for resolution: Is there a question of fact here present to preclude a summary judgment order? A response in the affirmative would be dispositive; whereas, a negative reply would raise the further question as to whether the order was entered for the proper party.

In the quest for the answer to the foregoing, we face the problem for decision as to whether a so-called "dragnet" clause in a real estate mortgage includes within the scope of its security, Mastercharge liabilities which were entirely unrelated to the business of the Mortgagor. (The facts fail to disclose, with clarity, that the premises purchased by the mortgagor on which said mortgage was given to the defendant to secure funds borrowed to purchase same, were to be used or were used for business or commercial purposes of said mortgagor. The supplemental affidavit of the defendant intimates a business use by stating that the Mastercharge indebtedness is "unrelated to his business".)

The defendant urges that it possesses a priority status to entitle it to the funds claimed by the plaintiff notwithstanding the plaintiff's attachment. It cites as authority for this position, the decisions of the Massachusetts Supreme Judicial Court, to wit:—**Exchange Trust Company v. Hitchcock,** 249 Mass. 547 (1924) and **Carlson v. Lawrence H. Oppenheim Co.,** 334 Mass. 462 (1956). These decisions do validate the use of "dragnet" clauses in mortgages in this Commonwealth.

The plaintiff argues that recent Appeals Court decisions were rendered with full, acknowledged awareness of the **Exchange Trust** and **Carlson** cases, and states the law with modern accuracy, gives its position priority paramount to that claimed by the defendant.

It is our view that said recent Appeals Court decisions in the cases of **Financial Acceptance Corp. v. Garvey,** 6 Mass. App. Ct. 610 (1978) and **Everett Credit Union v. Allied Ambulance Services, Inc.,** 1981 Mass. App. Ct. Adv. Sh. 1500, indicate that the intent of the parties to a mortgage agreement at the time of its execution must be ascertained to determine whether a "dragnet" clause

embraces a subsequent indebtedness.

In the case of **Financial Acceptance Corp. v. Garvey, supra,** at page 613, the Court said:—

> "The guiding principle in construction of a dragnet clause in a mortgage is the determination of the intent of the parties in view of the particular circumstances and the language employed in the mortgage -----. The plaintiff's principal argument is that dragnet clauses should be narrowly interpreted because of the danger that a broad interpretation will permit creditors to secure, by mortgage lien, debts which are unrelated to the original mortgage transaction -----. A principle which has been applied by a number of courts to aid in determining intent is that a dragnet clause will generally be construed to apply to "only debts of the general kind of those specifically secured" -----or which bear "sufficiently close relationship to the original indebtedness" ----- that the consent of the debtor can be inferred -----. The California Court of Appeals ----- applied, in addition, a second test: whether the mortgagee relied on the security in making the loan. The purpose of these two tests is to determine what the reasonable expectation of the parties were."

In the case of **Everett Credit Union v. Allied Ambulance Services, Inc., supra,** the Appeals Court was faced with a "dragnet" provision which purported to secure debts of the mortgagor "whether now existing or hereafter contracted". At page 1503, the Court said:—

> "Mortgages covering future advances are usually held valid in Massachusetts, at least where such advances are made prior to the intervention of other liens." (Cases are thereafter cited, including **Financial Acceptance Corp. v. Garvey, supra.**)

Further, at page 1504, the Court said:—

> "While so-called "dragnet" clauses are narrowly construed where they are used oppressively or as a device for fraud, "relief from the effect of dragnet clauses involves principles of equity." ---. See also Osborne, Nelson and Whitman, Real Estate Finance Law, s. 12.8 (1979) where at 773, the authors state that the holdings limiting "dragnet" provisions "are said to be based on the intention of the parties, but in reality they usually represent the court's conceptions of fairness and equity -----. There is here no evidence of any unfairness or oppressiveness in the relationship between Everett and Allied. Both loans were made for business purposes in a commercial setting -----."

Though the **Exchange Trust** and **Carlson** decisions do recognize "dragnet" clauses as valid, we hold the opinion that the Appeals Court cases of **Financial Acceptance** and **Everett Credit, supra,** further explain and amplify the law as it applies to such clauses by properly declaring that the intent of the contracting parties controls. We, therefore, concluded that said **Financial Acceptance** and **Everett Credit** Appeals Court decisions, **supra,** are consistent and complement the Supreme Judicial Court decisions in **Exchange Trust** and **Carlson, supra.** In fact, in all cases, both courts ultimately decided the "dragnet" clause did embrace the subsequent loans made to mesh and merge therewith as security for same; based, however, on the particular facts there involved.

The affidavits filed by the defendant failed to set forth specific facts to demonstrate that the so-called "dragnet" clause was to include Mastercharge liabilities made to the mortgagor to be secured. Dist/Mun. Cts. R. Civ. P. 56(f). Although one is competent to set forth his own intent as to an agreement, this

does not bind the other party. **Commonwealth Bank & Trust Co. v. Plotkin,** 371 Mass. 218, 221-222 (1976).

The affidavits submitted by both parties, being conclusory, are insufficient. **Bowen v. Stackhouse,** 1980 Mass. App. Ct. Adv. Sh. 1536. **First Nat. Bank of Boston v. Slade,** 1979 Mass. App. Ct. Adv. Sh. 1047, 1050.

Further, when construction of a mortgage is brought in issue, a primary question for determination is what was the intention of the parties. To arrive at a considered decision, all the circumstances attending the execution of the mortgage and the nature of the transaction are to be considered as well as the language of the instrument itself. **Thomas v Christensen,** 1981 Mass. App. Ct. Adv. Sh. 1277, 1283. The interpretation of the employed language here involved will be affected by a finding of fact. **Robert Industries, Inc. v. Spence,** 362 Mass. 751, 755 (1973). **Antonellis v. Northgate Construction Corp.,** 362 Mass. 847, 851 (1973).

The "dragnet" clause itself, without supporting evidence, is held to be insufficient to support the conclusion that the Mastercharge indebtedness was within the contemplation of the parties to the mortgage transaction or that same was to be secured by said mortgage nor is there any inference thereof warranted.

In summary, when clear, supportive evidence is absent showing a contrary intention, a "dragnet" clause will not embrace future advances unless the facts reveal that said advances are of the same kind and quality or relate to the original transaction, or unless the new obligation incurred refers or was contemplated by the parties to the mortgage and to have said mortgage be security therefor. Presently, the facts set forth in this case do not reveal the circumstances attending the method of doing business by the mortgagor and the defendant. The facts are inadequate to enable a proper interpretation and application of the language employed. There are no facts regarding Mastercharge obligations as same may or may not relate to the mortgage. At this juncture, clarity is lacking as to whether the "dragnet" clause was used with or without special regard to include within its sweep, non-business purchases of a Mastercharge type. Though the defendant by its affidavits relies on the "dragnet" clause language, such language is not conclusive of the intent of the parties. **Commonwealth Bank & Trust Co. v. Plotkin, supra.**

In answer to the question first posed setting forth the issue presented here for resolution; namely: "Is there a question of fact here present to preclude a summary judgment order?", we respond in the affirmative. It follows that the trial court's order of summary judgment for the defendant can not stand by reason of prejudicial error. Hence, same be and is hereby vacated. This case is remanded to the trial court for such further consideration and action consistent with this opinion.

**Bernard Lenhoff, Justice**
**William T. Walsh, Justice**
**F. J. Larkin, Justice**

This certifies that this is the opinion of the Appellate Division in this cause.

**Robert E. Fein, Clerk**