DEBRAL REALTY, INC. *VS.* MARLBOROUGH COOPERATIVE
BANK.

No. 97-P-424.

Middlesex. January 19, 1999. - October 15, 1999.

Present: ARMSTRONG, PERRETTA, & RAPOZA, JJ.

*Mortgage,* Dragnet clause, Foreclosure. *Real Property,* Mortgage, Tenancy by
the entirety. *Tenancy by the Entirety. Consumer Protection Act,* Mortgage
of real estate. *Negotiable Instruments,* Indorsement.

A "dragnet" clause in a mortgage of nonresidential income-producing
premises operated to secure a subsequent mortgage of a similar property
by the same mortgagor and mortgagee, and the mortgagee's foreclosure on
both properties upon the default of mortgage payments on the second-
acquired property was proper. [94-98]

A Superior Court judge correctly dismissed a claim under G. L. c. 93A where
there was no evidence of unfair or oppressive conduct by the defendant.
[98]

A junior mortgagee that foreclosed on properties and undertook to make
mortgage payments did not thereby assume the mortgage such that it
should be held liable for expenses a senior mortgagee incurred in success-
fully defending a claim by the junior mortgagee that the senior's subsequent
foreclosure under a dragnet clause was unlawful. [98-99]

CIVIL ACTION commenced in the Superior Court Department on
August 11, 1992.

The case was heard by *Robert H. Bohn, Jr.,* J.

*David M. Rosen* for the plaintiff.

*Robert L. Hamer* for the defendant.

PERRETTA, J. In a series of loan transactions which took place
between 1980 and 1989, Richard J. Budryk and his wife, Silva
Y. Budryk (the Budryks), obtained mortgage-backed financing,
first from the Marlborough Cooperative Bank (bank) and
subsequently from Debral Realty, Inc. (Debral). All the notes
and mortgages concerned the Budryks' acquisition of income-
producing property situated on Hastings Street and West Main

Street in Marlborough. The Hastings Street transaction was first in time; the West Main Street transaction occurred some five years later. The Budryks thereafter defaulted on their loan obligations, and Debral, the junior mortgagee, foreclosed on its mortgages on the properties. Although Debral remained current in its mortgage payments to the bank on the Hastings Street property, it defaulted as to West Main Street. The bank asserted a right to foreclose on both properties on the basis of a "dragnet" clause contained in the Hastings Street mortgage. Debral then brought the present action, claiming that the foreclosure was wrongful and in violation of G. L. c. 93A, § 11. A Superior Court judge found and concluded that, because the debt on West Main Street was different in kind and not closely related to the obligation on Hastings Street, the subsequent debt was not secured by reason of the dragnet clause in the Hastings Street mortgage. He also concluded that, although the bank's foreclosure was wrongful, it was not unfair or otherwise in violation of G. L. c. 93A. On the parties' cross appeals, we conclude that the bank is entitled to judgment.

1. *The mortgages.* None of the facts are in dispute, and we recite them as they appear in the parties' agreed statement of facts and exhibits. In so doing, we refer to the two pieces of property involved in this dispute as Hastings Street and West Main Street. Neither of the two properties was the principal residence of the Budryks, who resided in Framingham.

We begin with the events of March 3, 1980, when the Budryks granted the bank a mortgage on Hastings Street to secure a note of the same date. The mortgage was signed by Richard J. Budryk and Silva Y. Budryk, each signature appearing on a separate line. The mortgage provided that it was to secure payment of the note executed that same date and "also to secure the payment of all other indebtedness of the mortgagor to the mortgagee hereafter arising." It is this clause which is commonly referred to as a "dragnet clause." See *Exchange Trust Co.* v. *Hitchcock,* 249 Mass. 547, 549-550 (1924).

Some five years later, more specifically on March 22, 1985, Richard J. Budryk and Silva Y. Budryk executed and delivered an additional note to the bank. This note was secured by a first mortgage of even date granted to the bank by the Budryks on the West Main Street property. Four signatures appear on the note on four separate lines: "Richard J. Budryk," "Silva Y.

Budryk," "Richard J. Budryk, Tr.," and "Silva Y. Budryk, Tr."[1] The mortgage note contained no reference to the Hastings Street mortgage.[2]

On March 11 and 20, 1989, Debral became a junior mortgagee on the two properties in issue. Debral foreclosed on its mortgages on January 31, 1991, and, subject to the bank's mortgages, became the owner of the properties. Within a month, Debral failed to make monthly payments to the bank on the West Main Street mortgage, and the bank placed the Hastings Street and West Main Street obligations into default and brought foreclosure proceedings.

2. *The dragnet clause.* Debral does not question the validity of the dragnet clause in the Hastings Street mortgage. See *Everett Credit Union* v. *Allied Ambulance Servs., Inc.*, 12 Mass. App. Ct. 343, 346 (1981) ("[m]ortgages covering future advances are usually held valid in Massachusetts, at least where such advances are made prior to the intervention of other liens"). Rather, the issue before us is the applicability of the dragnet clause to the bank's mortgage note on West Main Street. In construing the dragnet clause, we are mindful that the controlling principle is the intent of the parties in light of the circumstances and the language of the mortgage. See *Financial Acceptance Corp.* v. *Garvey*, 6 Mass. App. Ct. 610, 613 (1978) ("guiding principle in construction of a dragnet clause in a mortgage is the determination of the intent of the parties in view of the particular circumstances and the language employed in the mortgage").

To determine the intent of the bank and the Budryks with respect to the application of the dragnet clause in the Hastings Street mortgage to the subsequent West Main Street debt, we look to whether the West Main Street debt is of the same "general kind," *id.*, quoting from *Monroe County Bank* v.

---

[1]Richard J. Budryk and Silva Y. Budryk were the trustees of the Westside Realty Trust, a nominee trust controlled by them.

[2]There was a third transaction by Richard J. Budryk alone. On October 3, 1986, he signed a third note which was secured by a mortgage of even date on property situated at 55 Chestnut Street in Marlborough. The mortgage was granted to the bank by "Richard J. Budryk, Sr., Trustee of Junior Realty Trust." Although the bank originally took the position that this mortgage was also secured by the Hastings Street mortgage, a Superior Court judge (other than the trial judge) granted Debral's motion for summary judgment on so much of the complaint as pertained to this property. On appeal, the bank does not challenge the ruling with respect to Chestnut Street.

*Qualls*, 220 Ala. 499, 500 (1929), as the debt specifically secured or whether it has a " 'sufficiently close relationship to the original indebtedness' . . . that the consent of the debtor [to securing debt by the earlier mortgage] can be inferred." *Id.*, quoting from *National Bank* v. *General Mills, Inc.*, 283 F.2d 574, 578 (8th Cir. 1960), and relying upon cases cited therein. See *Brae Asset Fund, L.P.* v. *Kelly*, 223 B.R. 50, 57-58 (Bankr. D. Mass. 1998).[3]

Debral points to the various loan documents in evidence in support of its argument that the Hastings Street and West Main Street notes were not of the same general kind.[4] The trial judge determined that the facts contained in those documents provided an insufficient basis, as matter of law, for concluding that the dragnet clause in the Hastings Street mortgage was inapplicable to the West Main Street loan. See *Financial Acceptance Corp.* v. *Garvey*, 6 Mass. App. Ct. at 612; *Everett Credit Union* v. *Allied Ambulance Servs., Inc.*, 12 Mass. App. Ct. at 345. On this point, we agree with the trial judge.

Neither property, Hastings Street or West Main Street, involved the Budryks' residence. The debts evidenced by the notes on these two properties were for the same business purpose, that is, the financing of property that produced income for the Budryks. The note on the West Main Street property was a term obligation incurred by the Budryks, and it was signed by each of them twice, viz., individually and as trustee of a nominee trust. It follows from their signatures that, as matter of law, each of the Budryks was liable as a comaker, jointly and severally, on the West Main Street note. See *First Safety Fund*

---

[3]See also Restatement (Third) of Property — Security (Mortgages) § 2.4(c) (Tent. Draft No. 1, 1991), which provides that, unless the future advances are similar in character to the original mortgage loan, the mortgage will secure them only if the dragnet clause describes them with reasonable specificity, or if the parties agree at the time of the advances that the mortgage will secure them.

[4]Debral argues that the West Main Street note made no mention of the Hastings Street mortgage, that the West Main Street loan was approved upon the basis of a standard loan to value ratio of eighty per cent, that the Hastings Street loan was a direct reduction real estate loan whereas the West Main Street loan was an indexed adjustable rate mortgage note, that the Hastings Street loan was to individual borrowers whereas the West Main Street loan was granted to a real estate trust with undisclosed beneficiaries, that Silva Y. Budryk, who was a "co-borrower" on the Hastings Street loan, did not sign the West Street loan application, and that Silva J. Budryk received a notice of default in respect to Hastings Street only.

*Natl. Bank* v. *Friel*, 23 Mass. App. Ct. 583, 585 (1987); *Seronick* v. *Levy*, 26 Mass. App. Ct. 367, 370 (1988). Even assuming it could be thought that the Budryks signed the West Main Street note individually as endorsers rather than as makers, that note was of the same general kind as the Hastings Street note. In that circumstance, the language of the dragnet clause ("all other indebtedness of the mortgagor to the mortgagee") would include the note given by the mortgagor as maker as well as endorser. See *Financial Acceptance Corp.* v. *Garvey*, 6 Mass. App. Ct. at 616.

3. *Tenants by the entirety as unit debtors.* Relying on *In re Ballarino*, 180 B.R. 343, 347 (Bankr. D. Mass. 1995), the trial judge concluded that the bank's foreclosure was wrongful because "the debtor on the West Main Street note was not the mortgagor of the Hastings Street property." That conclusion was, in turn, based upon the undisputed facts that the West Main Street note was signed by Richard J. Budryk and Silva J. Budryk, individually and as trustees, whereas the Hastings Street mortgage was granted to the bank by "Richard J. Budryk and Silva Y. Budryk, husband and wife, *as tenants by the entirety*" (emphasis supplied). The fact that the Hastings Street mortgage identified the Budryks as husband and wife and as tenants by the entirety led the trial judge to conclude that the dragnet clause in that mortgage was "associated with debts of a unit — tenants by the entirety." He concluded that, because the Budryks were individually liable on the West Main Street note, the debtors on the two notes were different and that, therefore, the dragnet clause was inapplicable to West Main Street. We conclude that the trial judge erroneously merged two fundamentally different concepts, the legal form in which title to the collateral property is held and the nature of the borrowers' obligation on the debt.

The concept of a husband and wife holding title to real estate as tenants by the entirety is of no significance vis-à-vis their concurrent debt obligation evidenced by a promissory note. See *Licker* v. *Gluskin*, 265 Mass. 403 (1929). "Tenants by the entirety" is a phrase which is descriptive of title rather than liability on a mortgage. As appearing in a deed or a mortgage, it signifies that there is an indivisible estate, a unitary title, in two tenants who are husband and wife. See *Bernatavicius* v. *Bernatavicius*, 259 Mass. 486, 487 (1927); *Coraccio* v. *Lowell Five*

*Cents Sav. Bank*, 415 Mass. 145, 151 (1993).[5] That is not to say, however, that both the husband and wife cannot be held jointly and severally liable on the mortgage note.

With respect to the Budryks' liability on the West Main Street debt, the question is whether both the Hastings Street mortgagors, that is, *both* tenants by the entirety, were obligated on that subsequent debt. See 2 Nelson & Whitman, Real Estate Finance Law § 12.8, at 232 (3d ed. 1993) ("If there are several joint mortgagors, only future debts on which all of the mortgagors are obligated [or at least of which all were aware] will be covered by the dragnet clause"). There is nothing in *In re Ballarino*, 180 B.R. at 347, in which the subsequent note was signed by the husband but not the wife, that holds to the contrary. See cases collected and cited in 2 Nelson & Whitman, *supra* at § 2.8; Annot., Debts Included in Provision of Mortgage Purporting to Cover All Future and Existing Debts — Modern Status, 3 A.L.R. 4th 690, 697 (1981 & Supp. 1994), cited in *In re Ballarino*, 180 B.R. at 347. See also note 3, *supra*. Further, because the property here in issue is income-producing property and not the Budryks' marital residence, see G. L. c. 209, § 1, we are not faced with the same concern presented to the court by *In re Ballarino*, 180 B.R. at 347, that is: "The danger of broadly construing dragnet clauses in home mortgages referring to husband and wife as a unit is manifest: it 'would authorize the husband to so increase the extent of a mortgage lien upon an estate by the entireties without the wife's knowledge as to extinguish the remaining interest in the mortgaged property,' or nowadays vice versa. *United States* v. *American Natl. Bank of Jacksonville*, 255 F.2d 504, 509 (5th Cir.), cert. denied, 358 U.S. 835 [(1958)]."

Although Richard J. Budryk and Silva Y. Budryk identified themselves in the prefatory paragraph to the Hastings Street mortgage as "husband and wife, as tenants by the entirety, both of Framingham . . . hereinafter called the Mortgagor," their signatures appear without limitation on the mortgage itself. Of more and crucial significance, their signatures appear on the mortgage note of even date without description or limitations of themselves as tenants by the entirety or language otherwise denoting a single debtor unit. Rather, that note clearly states

[5]Because neither of the properties here in issue concerns the residence of the Budryks, we need not consider the protections afforded by G. L. c. 209, § 1, which pertains only to the principal residence of tenants by the entirety.

that the "undersigned (jointly and severally, if more than one) promise(s) to pay." See *Bielanski* v. *Westfield Sav. Bank*, 313 Mass. 577, 580 (1943) ("intent of the parties is to be ascertained by construing together these [two] instruments as comprising a single plan by which the defendant was to be paid"). Compare *In re Chiodetti*, 163 B.R. 6, 10 (Bankr. D. Mass. 1994), and *In re Moran*, 163 B.R. 11, 16 (Bankr. D. Mass. 1994), where the court, in both instances and in reliance upon *In re Old Electralloy Corp.*, 132 B.R. 705, 708 (Bankr. W.D. Pa. 1991), refused to enforce a dragnet clause set out in the note but not the mortgage.[6]

Based upon the above-discussed authorities and the undisputed evidence (the mortgages and notes of even dates signed by the Budryks in connection with their purchase of income-producing property in which they did not reside), we conclude that the West Main Street debt was covered by the dragnet clause in the Hastings Street mortgage and that the bank's foreclosure upon Debral's default was not wrongful. It follows from that conclusion and the parties' agreed statement of facts, that "there is no evidence of unfairness or oppressiveness in the relationship between the [b]ank and the Budryks," that we see no error in the trial judge's dismissal of Debral's claim under G. L. c. 93A. See *Everett Credit Union* v. *Allied Ambulance Servs., Inc.*, 12 Mass. App. Ct. at 347.

4. *The bank's recovery of expenses.* There remains one matter asserted by the bank on its cross appeal. It claims that, because it was within its right to foreclose on the Hastings Street mortgage upon Debral's default on the West Main Street debt, it is entitled to an award in the amount of the expenses it incurred in defending against this action brought by Debral. Citing *Consumers Sav. Bank* v. *Coven*, 8 Mass. App. Ct. 594 (1979), the bank claims that when Debral made the monthly payments due the bank on the Hastings Street note, it assumed that mortgage debt. We do not agree.

By taking title through the foreclosure process, Debral did

---

[6]In *Old Electralloy Corp.*, *supra* at 708, the dragnet clause appeared in the mortgage note but not the mortgage. The court characterized and rejected the mortgagee's argument that the mortgage and the note should be read together as an "erroneous non sequitur," on the basis of the fact that the bank would have no obligation to disclose the contents of a note to a potential subsequent lienholder or interested party. *Ibid.* Here, however, the dragnet clause was in the mortgage, and, therefore, all interested parties had notice.

not "assume" the mortgage debt on the Hastings Street note. See *Fiske* v. *Tolman*, 124 Mass. 254, 256 (1878).[7] Moreover, we see nothing in *Consumers Sav. Bank* v. *Coven*, 8 Mass. App. Ct. at 596, that supports the bank's broad proposition that Debral assumed all the Budryks' obligations under the Hastings Street mortgage because Debral sought to stave off foreclosure on West Main Street by making monthly payments on the Hastings Street mortgage. As stated to the contrary in *Coven, supra,* "[t]here must be words importing that the grantee will pay the debt to make him personally liable." The bank points to no such wording in the documents, and, upon review of the record before us, we find none.

5. *Conclusion.* The judgment is reversed, and the matter is remanded to the Superior Court for entry of a new judgment dismissing Debral's complaint against the bank in its entirety.

*So ordered.*

---

[7]There the court stated: "It is settled in this Commonwealth, that, where land is conveyed in terms subject to a mortgage, the grantee does not undertake, or become bound by the mere acceptance of the deed, to pay the mortgage debt. In the absence of other evidence, the deed shows that he merely purchased the equity of redemption. . . . He is indeed interested in its payment, because it is an encumbrance on the land of which he is the owner; but he has entered. into no obligation, express or implied, to pay it, and if he parts with his title he no longer has any interest in its payment." 124 Mass. at 256 (citations omitted).