# NAB Asset Venture III, L.P. *vs.* Brockton Credit Union.

No. 02-P-1238.

Suffolk. December 4, 2003. - September 30, 2004.

Present: Lenk, Kafker, & Mills, JJ.

*Mortgage,* Priority, Dragnet clause, Real estate. *Real Property,* Mortgage.

On a complaint filed in the Land Court seeking a declaration of the priority of three mortgages on certain real property (one granted in 1980 to the plaintiff and two granted in 1984 and 1989 to the defendant), the judge properly concluded that, by virtue of a 1984 agreement between the parties (in which the plaintiff subordinated its 1980 mortgage to the defendant's 1984 mortgage), the plaintiff's mortgage was an intervening lien between the defendant's two mortgages; further, the judge properly found that nothing in the subordination agreement demonstrated any clear intent between the parties to depart from the general rule that the plaintiff, as an intervening lienor, had priority over future advances (i.e., the defendant's 1989 mortgage), and that therefore, the "dragnet clause" contained in the defendant's 1984 mortgage did not give priority to the defendant's 1989 mortgage over the plaintiff's mortgage. [183-186]

Civil action commenced in the Land Court Department on October 23, 1997.

The case was heard by *Karyn F. Scheier*, J., on a motion for summary judgment.

*Michael P. Koretz* for the defendant.

*Robert H. Greene* for the plaintiff.

Lenk, J. The defendant, Brockton Credit Union (BCU), appeals the entry of summary judgment in favor of the plaintiff, NAB Asset Venture III, L.P. (NAB). NAB filed a complaint in the Land Court, pursuant to G. L. c. 231A, § 1, seeking a declaration of the priority of its mortgage on certain real property located in Brockton, relative to two mortgages held by BCU. A judge of the Land Court declared that NAB's mortgage had priority over one of BCU's mortgages.

*Background.* We summarize the undisputed facts. In 1966, Arthur A. Mantalos and Hariklea Mantalos (Mantaloses) acquired title to several adjacent parcels of real property, with buildings thereon, located at 7, 8, 9, and 10 Fenway Circle in Brockton (we refer to the various parcels together as the property). On April 28, 1980, the Mantaloses granted a mortgage on the property (1980 mortgage) to the Massachusetts Bank and Trust Company (MBTC) to secure a note in the amount of $180,000, and their obligations under a guaranty agreement relating to a loan made to Parkway Restaurant, Inc.[1]

On January 24, 1984, the Mantaloses granted a mortgage on the property to BCU (1984 mortgage) to secure payment of a note in the amount of $66,000. The 1984 mortgage contained a so-called "dragnet clause."[2] By agreement dated February 10, 1984, MBTC subordinated its 1980 mortgage to BCU's 1984 mortgage.

The Mantaloses granted a mortgage on the property to Shawmut First County Bank, N.A. (Shawmut) on December 22, 1986 (1986 mortgage). The 1986 mortgage expressly provided: "This mortgage is subject to all prior mortgages of record."

The Mantaloses granted yet another mortgage on the property to BCU in the amount of $35,000 on May 1, 1989 (1989 mortgage), to secure advances made under a revolving credit agreement.

By a subordination agreement dated September 29, 1989, Shawmut agreed to subordinate its 1986 mortgage to BCU's 1989 mortgage. MBTC did not execute a similar subordination agreement, or otherwise agree expressly that its interest in the 1980 mortgage would be subordinate to the 1989 mortgage.

The Federal Deposit Insurance Corporation, as liquidating agent for MBTC, assigned the 1980 mortgage to NAB on December 21, 1994. On October 8, 1997, after completing a foreclosure sale of the property, NAB executed a mortgagee's

---

[1] The record does not illuminate the relationship between the Mantaloses and Parkway Restaurant, Inc.

[2] The dragnet clause provided as follows: "It is also agreed that this Mortgage is security for the payment of the aforesaid obligation and all other direct and contingent liabilities of the Mortgagor hereof to the Holder hereof due or to become due, whether now existing or hereafter contracted."

deed to itself. On October 23, 1997, holding proceeds from the sale, NAB commenced the present Land Court action seeking a determination whether BCU's 1989 mortgage was senior to the 1980 mortgage now held by NAB, there being no dispute that BCU's 1984 mortgage was senior to the 1980 mortgage.[3] A judge of the Land Court concluded that the dragnet clause in BCU's 1984 mortgage did not apply to BCU's 1989 mortgage or to the debt secured thereby, and that the 1980 mortgage was subordinated only to BCU's 1984 mortgage.

*Discussion.* Based on her review of the summary judgment record, which consisted of documentary evidence and a transcript of the deposition of Eileen McDevitt, a collections supervisor for BCU, the motion judge concluded that it was the intent of the parties involved in the 1984 mortgage transaction that NAB's 1980 mortgage would be subordinate only to BCU's 1984 mortgage and not the later 1989 mortgage, the dragnet clause notwithstanding. On appeal, BCU argues that the question of the intent of the parties was a disputed issue of material fact, precluding summary judgment.

As a general matter, dragnet clauses are enforceable in Massachusetts. See *Everett Credit Union* v. *Allied Ambulance Servs., Inc.*, 12 Mass. App. Ct. 343, 346 (1981). We have held that as between the debtor and the mortgage holder, we determine the effect of a dragnet clause by assessing the intent of the parties in light of the circumstances and language of the mortgage. *Id.* at 346-347. *Debral Realty, Inc.* v. *Marlborough Coop. Bank*, 48 Mass. App. Ct. 92, 94 (1999). In order to be effective, the subsequent debt asserted by the mortgagee to be secured by the dragnet clause must be of the same "general kind" as the debt specifically secured, or sufficiently related to the original debt that the consent of the debtor may be inferred. *Financial Acceptance Corp.* v. *Garvey*, 6 Mass. App. Ct. 610, 613 (1978). *Debral Realty, Inc.* v. *Marlborough Coop. Bank*, *supra* at 94-95. We have imposed this narrow construction on dragnet clauses, see *Financial Acceptance Corp.* v. *Garvey, su-*

[3]At the foreclosure sale on September 5, 1997, NAB paid $5,000 to obtain record title of the property. The surplus proceeds of the foreclosure sale were insufficient to cover the claims of mortgagees NAB, BCU, MBTC, and Shawmut.

*pra*; *Debral Realty, Inc.* v. *Marlborough Coop. Bank, supra*, in an effort to prevent the oppressive or fraudulent use of dragnet clauses, see *Everett Credit Union* v. *Allied Ambulance Servs., Inc., supra* at 347, and to effect the reasonable expectations of the parties. *Financial Acceptance Corp.* v. *Garvey, supra.*

In the present case, however, the issue is not whether, as between the borrower and the lender, the lender may look to the property mortgaged under a dragnet clause as security for later debt. Instead, the question is of the priority of advances secured under the dragnet clause but made after the creation of an intervening lien. Resolution of that question was expressly reserved in *Everett Credit Union* v. *Allied Ambulance Servs., Inc.*, 12 Mass. App. Ct. at 345 n.2.

Different considerations come into play when an intervening lender acquires a security interest prior to advances sought to be brought within the dragnet clause. *Everett Credit Union* v. *Allied Ambulance Services, Inc.*, 12 Mass. App. Ct. at 346. ("Mortgages covering future advances are usually held valid in Massachusetts, at least where such advances are made prior to the intervention of other liens"). See *Barnard* v. *Moore*, 8 Allen 273, 274 (1864) ("A mortgage may be valid, having a stipulation in it for securing future advances and liabilities on the part of the mortgagee. If such advances have been made or liabilities assumed before other interests have legally intervened, they will be secured by the mortgage"). Contrast *Debral Realty, Inc.* v. *Marlborough Coop. Bank*, 48 Mass. App. Ct. at 94 (no intervening lien). In the circumstances of an intervening lien, we give the intent of the parties to the mortgage containing the dragnet clause less weight when determining the effect of that clause because the interests of the intervening lender are now also at stake.[4] See *Barnard* v. *Moore*, 8 Allen at 274 ("But after a creditor has attached the debtor's interest in the property mortgaged . . . no new and independent indebtment, either by moneys advanced, services rendered or liabilities assumed, will

---

[4]See Osborne, Law of Mortgages §§ 117a(4)-119 (2d ed. 1970), for a discussion of the rationales for limitations on the validity and priority of mortgages for future advances. "The soundest explanation for restricting the first mortgagee's priority lies in a desire to keep the mortgagor's title free for additional mortgages by others, or for sale." *Id.* at § 117a(4).

defeat the lien by attachment, or have a priority to the same under the mortgage"). See also Osborne, Law of Mortgages §§ 118, 119 (2d ed. 1970); 2 Gilmore, Security Interests in Personal Property §§ 35.1 et seq. (1965). This situation is analogous to that of a construction loan[5] where long-standing precedent provides that, if a mortgagee has the legal right to cease disbursing funds (the funds were not unconditionally committed), an intervening creditor has priority over future disbursements of the mortgagee made after the creditor's attachment. See *Whelan* v. *Exchange Trust Co.*, 214 Mass. 121, 123 (1913); *Barry* v. *General Mort. & Loan Corp.*, 254 Mass. 282, 289 (1926); *Evans Prod. Co.* v. *D.J. Dev. Corp.*, 6 Mass. App. Ct. 306, 307-308 (1978).

Applying both the principle of narrow construction of dragnet clauses and that of the general priority of intervening lienors, we conclude that if lenders intend to retain priority under a dragnet clause for future advances as against intervening lienors, the language effecting that intent should be explicit. Accordingly, to the extent that we are concerned with the intent of the parties in resolving the question in this case, we are concerned not with the intent of the borrower and lender in the 1984 BCU loan transaction, but with the intent of BCU and MBTC as reflected in MBTC's agreement to subordinate its 1980 mortgage to BCU's 1984 mortgage. The $66,000 1984 mortgage to BCU, with a dragnet clause, replaced a pre-existing $10,000 mortgage[6] held by BCU that did not contain a dragnet clause.[7] The language of MBTC's subordination agreement makes no

[5]See 2 Gilmore, Security Interests in Personal Property § 35.3, at 925 ("The institutional transaction out of which future advance law grew was the building construction loan").

[6]Evidently, on October 19, 1966, the Mantaloses granted a mortgage on the property to BCU to secure a note in the amount of $10,000. The MBTC 1984 subordination agreement stated, "Whereas the Brockton Credit Union . . . now holds a first mortgage on the said premises securing payment of a promissory note for $10,000.00 . . . and . . . for the purpose of taking up the outstanding mortgage to said Brockton Credit Union, above referred to, the said . . . Mantalos[es], have heretofore executed and delivered to the said Brockton Credit Union, a promissory note for the sum of $66,000.00 and interest, and a mortgage to secure the same covering the above described premises, bearing date January 24, 1984."

[7]MBTC's February, 1984, agreement to subordinate stated as follows: "[I]n order to avoid the inconvenience of releasing and renewing the said mortgage

reference to the dragnet clause contained in the 1984 mortgage, although it subordinates priority "as against the indebtedness secured by the first mortgage above referred to." Because the MBTC subordination agreement initially uses the phrase "first mortgage" to describe the 1966 BCU mortgage, and subsequently uses the phrase "a new first mortgage" to describe the 1984 mortgage to BCU, the agreement to subordinate to "the indebtedness secured by the first mortgage above referred to" does not demonstrate MBTC's intent to subordinate to future advances. The stated purpose of MBTC's subordination, "to avoid the inconvenience of releasing and renewing the said mortgage to the Massachusetts Bank and Trust Company," also does not reflect an intent to subordinate to future advances. Moreover, in contrast to Shawmut, MBTC did not expressly agree to subordinate to BCU's 1989 mortgage.

By virtue of the subordination agreement, the 1980 mortgage was an intervening lien between BCU's 1984 mortgage and BCU's 1989 mortgage. Nothing in the language of MBTC's subordination agreement demonstrates any clear intent to depart from the general rule that an intervening lienor has priority over future advances. In the circumstances of this intervening lien, and absent evidence of the intervening lienor's intent to subordinate to future advances, we determine that the dragnet clause in BCU's 1984 mortgage did not give priority to BCU's 1989 mortgage over the 1980 mortgage, and there was therefore no error in the entry of summary judgment in favor of the plaintiff, declaring the parties' rights to this effect. The judgment of the Land Court is affirmed.

*So ordered.*

to the Massachusetts Bank and Trust Company, said Massachusetts Bank and Trust Company, being the owner and holder of said mortgage, does hereby consent to the execution of said Arthur A. Mantalos and Hariklea Mantalos to the Brockton Credit Union of a new first mortgage on the above described premises as security for the payment of $66,000.00 . . . and does hereby, for value received, waive any and all priority of lien or right under and by virtue of its said mortgage, as against the indebtedness secured by the first mortgage above referred to, and does hereby covenant . . . that said mortgage . . . shall be in all respects subject and subordinate to the new mortgage for $66,000.00 executed to the Brockton Credit Union, given to renew the first mortgage to said Company as above recited."