**In re Robert J. BALLARINO, Debtor.**

**FOXBOROUGH SAVINGS BANK, Plaintiff–Appellee,**

v.

**Mary N. BALLARINO; and Richard A. Luccio, as Trustee of the Octoped Trust, Defendants–Appellants.**

**Civ. A. No. 94–10994–PBS.**

United States District Court, D. Massachusetts.

March 31, 1995.

---

Richard F. Benway, Benway & Harrington, Westwood, MA, George R. Desmond, Framingham, MA, for appellants.

Joseph J. Brodigan, Langan, Dempsey & Brodigan, Boston, MA, for appellee.

OPINION AND ORDER ON DEFEN-
DANTS' APPEAL FROM A FINAL
ORDER OF THE UNITED STATES
BANKRUPTCY COURT

SARIS, District Judge.

## INTRODUCTION

The Bankruptcy Court held that a 1977 home mortgage granted by Robert and Mary Ballarino to the Foxborough Savings Bank ("the Bank") operates, through its dragnet clause, to secure the debt owed the Bank by Robert, as a result of the Bank's foreclosure on a commercial property he later acquired without his wife. On appeal, appellants Mary N. Ballarino and Richard A. Luccio, as trustee of the Octoped trust, argue that the dragnet clause relied upon by the bankruptcy court is unenforceable. This court agrees.

However, this court finds no clear error in the bankruptcy judge's findings that the debtor's transfer of the property to the trust was a "sham", and no defect in the equitable lien held by the Bank. However, because the bankruptcy judge deferred making specific findings on the Bank's equitable lien theory, the judgment below is *VACATED,* and the case *REMANDED.*

## BACKGROUND

Here follows, in abbreviated form, the facts found by the bankruptcy judge after a Chapter 7 adversary proceeding brought by the Bank which was claiming a fifty percent interest in the non-debtor spouse's home. In 1977, the Ballarinos granted the Bank a mortgage on 73 South Street, in Franklin, Massachusetts, to secure a $68,000 note used to purchase the home, in which they have resided ever since. The mortgage contains a dragnet clause.

In a deed recorded in 1982, the Ballarinos conveyed the South Street home to Robert J. Ballarino as the Trustee of the "Octoped Trust"—a nominee trust of which Robert and Mary each possessed a 50% beneficial interest. In documents dated 1986 but not recorded until 1989, Robert relinquished both statuses, naming his wife as the 100 percent beneficiary and his cousin, Richard A. Luccio, trustee. Appellants maintain that this suspicious sequence of events—Robert's initial designation of himself as a beneficiary, his failure to notice this designation for 5 years, his failure to record the correction for 3 years, as well as his statements in various financial forms throughout the period that he retained ownership—can all be explained by simple human error. The bankruptcy judge did not credit Robert Ballarino's testimony, and found this transfer of the residence to the trust a "sham," and Luccio a "straw."

Meanwhile, in 1987, Robert, in conjunction with several business associates, took out a mortgage on a commercial property in Plainville, Massachusetts, to secure a note from the Bank that they used to purchase the property. The Bank later foreclosed upon this mortgage—resulting in the $195,165 deficiency which is driving this lawsuit.

In 1990, the Bank sued the Ballarinos and Luccio in Norfolk County Superior Court—arguing that the conveyance to the trust was fraudulent, and that the dragnet clause was valid. A lis pendens alleging the Bank's interest in South Street was approved and recorded on May 2. A preliminary injunction, enjoining appellants from transferring any interest in that property, without stating any rationale, was issued and recorded on May 22. An appeals court order, dated July 31, clarified that this injunction applied only to 50% of the South Street property. This order was not recorded. When the case reached bankruptcy court, the parties agreed that, if it were found (as it was) that Robert has an interest in South Street, the Superior Court's preliminary injunction would amount to an equitable lien in favor of the Bank.

The bankruptcy decision of March 9, 1994, read in tandem with the amended order of March 23, seems to establish the following findings: (1) Because the "purported transfer from the Ballarinos to the trust was a sham," Robert retains a 50% beneficial interest in the South Street property. (2) The South Street mortgage—by operation of its dragnet clause—secures the deficiency owed to the Bank by Robert as a result of the Bank's foreclosure on the Plainville property, to the extent of Robert's interest in the South Street property. (3) As to the priority of the Bank's claim, "its rights as to the deficiency are equally secured with the original $68,000 note." (4) To the degree that Robert's debts are not secured by the South Street mortgage, they are dischargeable. (5) Robert's discharge is allowable, notwithstanding the Bank's arguments under 11 U.S.C. §§ 727(a)(2) and 727(a)(4)(a).

## STANDARD OF REVIEW

■ A district court must accept the findings of fact by a bankruptcy court unless those findings are clearly erroneous, and "due regard must be given to the opportunity of the bankruptcy court to judge the credibility of witnesses." Fed.R.Bankr.P. 8013. *See also In re Burgess,* 955 F.2d 134, 137 (1st Cir.1992). Conclusions of law, however, are reviewed *de novo. In re LaRoche,* 969 F.2d 1299, 1301 (1st Cir.1992).

## DISCUSSION

### A. *Enforceability of the Dragnet Clause*
#### 1. *Standards*

■ A dragnet clause is a "mortgage provision that purports to make the real estate security for other, usually unspecified debts that the mortgagor may already owe or may owe in the future to the mortgagee." *See generally,* Osborne, Nelson and Whitman, *Real Estate Finance Law,* § 12.8 at 228–229 (1979). "Dragnet clauses are generally enforced, but because their apparent coverage is so broad, and because the mortgagor is often unaware of their presence or implications, the courts tend to construe them narrowly against the mortgagee." *Id.*

In the mortgage in dispute, the dragnet clause reads, in relevant part, as follows: "This mortgage shall also secure any other loans, indebtedness, liability or liabilities, direct or indirect, of the Mortgagor to the Mortgagee or the holder or holders hereof, due or to become due or which may hereafter arise or be cont[r]acted."

■ In Massachusetts as elsewhere, the "guiding principle in construction of a dragnet clause is the determination of the intent of the parties in view of the particular circumstances and the language employed in the mortgage." *In re Goodman Industries,* 21 B.R. 512, 516–17 (Bankr.D.Mass.1982) (citations omitted). "A dragnet clause will not be considered to include future advances [1] 'unless the facts reveal that said advances are of the same kind and quality or relate to the original transaction, or [2] unless the new obligation incurred refers [to the mortgage] or was contemplated by the parties ... to have said mortgage be security therefor.'" *Id.*

In *Financial Acceptance Corp. v. Garvey,* 6 Mass.App.Ct. 610, 613, 380 N.E.2d 1332, 1335 (1978), the Massachusetts Appeals Court relied on the following test:

A principle which has been applied by a number of courts in other jurisdictions to aid in determining intent is that a dragnet clause will generally be construed to apply to "*only debts of the general kind* of those specifically secured," *Monroe County*

*Bank v. Qualls,* 220 Ala. 499, 500, 125 So. [615] 616 (1929) or which bear a "sufficiently close relationship to the original indebtedness," *National Bank v. General Mills, Inc.,* 283 F.2d 574, 578 (8th Cir. 1960), that the onset of the debtor can be inferred. *Wong v. Beneficial Sav. & Loan Assn.,* 56 Cal.App.3d 286, 295–296, 128 Cal. Rptr. 338 (1976). The California Court of Appeal in *Wong, supra,* applied, in addition, a second test: *whether the mortgagee relied on the security in making the loan.* The purpose of these two tests is to determine what the reasonable expectations of the parties were. (Emphasis added).

■■■■ "While so called 'dragnet' clauses are narrowly construed where they are used oppressively or as a device for fraud, 'relief from the effect of dragnet clauses involves principles of equity.'" *Everett Credit Union v. Allied Ambulance Serv., Inc.,* 12 Mass. App.Ct. 343, 346, 424 N.E.2d 1142, 1145 (1981) (citations omitted). The fact that a later loan does not make reference to an earlier mortgage and has its own collateral does not constitute a waiver of the dragnet provision. *Id.*

The possibility for oppressive use of dragnet clauses is high, as "such clauses are usually 'boilerplate' in a document drafted by the lender, seldom the subject of negotiation, and often the debtor is unaware of its presence or implications." *Lundgren v. National Bank of Alaska,* 756 P.2d 270, 277–78 (Alaska 1987).

In cases where "the dragnet clause did not contain language specifically referring to other joint and individual debts as being covered by the mortgage, but referred to the mortgagors as a unit, the courts [surveyed] uniformly held that the individual debts of one of the joint mortgagors was not secured." Anno., *Debts Included in Provision of Mortgage Purporting to Cover All Future and Existing Debts—Modern Status,* 3 A.L.R.4th 690, 697 (1981 & Supp.1994).

The danger of broadly construing dragnet clauses in home mortgages referring to husband and wife as a unit is manifest: it "would authorize the husband to so increase the extent of a mortgage lien upon an estate by the entireties without the wife's knowledge as to extinguish the remaining interest in the mortgaged property," or nowadays vice versa. *United States v. American Nat'l Bank of Jacksonville,* 255 F.2d 504, 509 (5th Cir.), *cert. denied,* 358 U.S. 835, 79 S.Ct. 58, 3 L.Ed.2d 72 (1958). Sensitive to this concern about protecting unwitting spouses, a judge of the Massachusetts Superior Court recently held that a dragnet clause in a mortgage granted by a husband and wife, as tenants by the entirety, did not secure a later note signed by the husband alone. *Debral Realty, Inc. v. Marlboro Cooperative Bank,* Superior Court C.A. No. 92–5292, slip op. at 6–7 (March 9, 1994).

### 2. Application to this case

■■■■ Based on the above guidelines of construction, the dragnet clause in this case is unenforceable for two independent reasons. First, a home mortgage is not of the same general kind as a commercial real estate mortgage. *See, e.g., First Security Bank of Utah v. Shiew,* 609 P.2d 952, 957–58 (Utah 1980) (home mortgage containing dragnet clause held not to secure later loan for cattle-raising venture); *Freese Leasing, Inc. v. Union Trust Savings Bank,* 253 N.W.2d 921, 925–26 (Iowa 1977) (residential real estate mortgages containing dragnet clauses held not to secure later loan for used car business).

Second, the mortgage at issue does not explicitly designate the obligations created as joint and several, either in the dragnet clause or in any other clause. The bank's contention to the contrary is not sustained by a careful examination of the document. The mortgagor is defined in the mortgage as "Robert J. Ballarino and Mary N. Ballarino, husband and wife." It is not sufficient that the *note* secured by the mortgage is written in the names of the Ballarinos "jointly and severally." *Cf. In re Chiodetti,* 163 B.R. 6, 11 (Bankr.D.Mass.1994) (refusing to enforce a dragnet clause in a promissory note where there was no dragnet clause in the mortgage, on the grounds that it is the language of the mortgage and not the note that controls). With respect to other equitable factors, there is no evidence that the dragnet clause was specifically negotiated by the parties at the

time of the original mortgage, or that the Bank relied on it at the time of the subsequent loan, or that the spouse ever knew about the subsequent loan. Thus, although the Bank does not seek to apply the dragnet clause against the wife's beneficial interest, under the tests set forth in *Garvey*, it is not enforceable against the husband's interest either.

### B. *Remaining Issues*

#### 1. *The Equitable Lien*

■ Appellants seek to retract their stipulation in the court below that the Superior Court's preliminary injunction gave rise to an equitable lien against the property. It has long been established under Massachusetts law that equitable interests in a trust may be reached and applied under G.L. c. 214, § 3(7). *New England Merchants National Bank v. Hoss*, 356 Mass. 331, 335, 249 N.E.2d 635, 638 (1969). A plaintiff who has obtained a preliminary injunction in an action to reach and apply has established an equitable attachment constituting security for satisfaction of a judgment. *In re Borofsky*, 138 B.R. 345, 347 (Bankr.D.Mass.1992). *See generally Bank of Boston v. Haufler*, 20 Mass.App.Ct. 668, 673–74, 482 N.E.2d 542, 546 (1985) (injunctions for a bank running against one in possession of property charged the property with an equity for the security of the bank or, in other words, constituted "equitable attachment" of the property).

■ As a threshold matter, appellants, who were represented by counsel at the bankruptcy hearing, have waived any argument not presented to the Bankruptcy Court, and are bound under the doctrine of judicial estoppel to the stipulation.

On the merits, appellants' argument fails as well. Their argument is that the Appeals Court clarification of that injunction was never recorded, and that plaintiff deceived the court by avoiding mention of the Appeals Court decision. The Appeals Court order, clarifying that the injunction applied only to 50% of the South Street property, concluded as follows: "In all other respects, the order of the Superior Court granting plaintiff's application for a preliminary injunction is to remain in full force and effect and the injunc-

tion as modified shall be treated as an order of that court." Thus, the recorded Superior Court injunction created a valid, perfected lien as to 50% of the property.

■ Second, appellants were wrong to assume that recording an equitable lien is always essential to its enforcement. A creditor's "failure to record the judgment affects her rights only against third parties. Thus, '[e]ven where recording is necessary to protect the lienor against creditors or innocent purchasers, it has been held not essential to the existence or validity of a lien as between the parties.'" *In re McElwee*, 161 B.R. 41, 44 (Bankr.S.D.Ill.1993) (citing authorities).

■ It is further argued that the preliminary injunction is a shaky foundation for a lien because it was based upon an unenforceable dragnet clause. A careful examination of the state court record, however, reveals that the request for the preliminary injunction relied on both the dragnet clause and the claim of fraudulent conveyance pursuant to G.L. ch. 109A. So long as there was a valid alternative basis for the order in the pleadings before that court, the judgment may give rise to a lien.

#### 2. *The Finding of "Sham"*

■ Appellants argue that the bankruptcy court committed clear error in finding to be false Robert Ballarino's testimony regarding the trust transactions. The Court ruled:

My finding as to the dragnet clause renders moot consideration of the ownership of South Street on the issues not arising under the Bankruptcy Code. However, in order to facilitate any further litigation which may ensue regarding the equity in the property, I will make appropriate findings here.

I find as a matter of law that the purported transfer from the Ballarinos to the trust was a sham. Given Debtor's experiences and background in banking and real estate, his testimony—that he did not read the declaration of trust and hence did not notice the error in the trust in 1981; that he forgot to file the amendments for three

years; that the statement in the amendments (¶ 10) that he and his wife were both beneficiaries of the trust was an error; and that his misstatements of the ownership of South Street in the various financial statements were also mistakes—is simply not credible. As he demonstrated with regard to the Florida property (¶ 14), Debtor remained in control at all times. It over dignifies Luccio's involvement to call him a straw.

If there is any equity in South Street above the FSB and any other applicable secured interests, that equity is property of the estate, and should be recovered by the Chapter 7 trustee.

This finding was amply justified. The initial transfer of the property was into a nominee trust where Ballarino was both trustee and beneficiary.[1] Given the extreme degree of control exercised by Ballarino as beneficiary even after Luccio was named trustee in 1986, the bankruptcy court—even in the absence of the lack of recording—was well justified in ruling that Luccio was a straw and the trust was a sham. *See generally* 28 Eno and Harvey, Massachusetts Practice Real Estate Law § 15.9 at p. 357 (1995). ("A conveyancer must be aware of certain risks in passing on titles of property held in a nominee trust. As in any trust, there can be a merger if the legal and equitable ownerships are the same."). Cf. *Druker v. State Tax Comm'n*, 374 Mass. 198, 201, 372 N.E.2d 208 (1978) ("extreme degree of control exercised by beneficiaries ... vitiates the creation of a trust" for purposes of state income taxation). Even if the trust were not vitiated, Robert Ballarino still had a fifty percent beneficial interest in the residence until 1989 when he recorded the transfer of his fifty percent interest to his wife. *Id.* at § 15.12 at p. 360.

Because Robert Ballarino had an outstanding debt to the Bank at the time of the effective date of his transfer of his fifty percent interest in 1989, the preliminary injunction issued by the Superior Court was justified by a likelihood of success on the fraudulent conveyance claim. This court defers to the credibility determinations of the factfinder, particularly here where Robert Ballarino's version of the transactions regarding ownership of the property is so implausible. It is unlikely that a sophisticated banker would make such a series of basic financial mistakes, all ultimately redounding to his benefit. The appellants have not proven that this fact-finding is clearly erroneous.

Appellants also renew their argument that they deserve a new trial, because, *inter alia,* the issue of fraudulent conveyance was not squarely before the court. In the joint pretrial statement, the parties agreed that this was an issue of fact to be litigated and it was contained in the plaintiff's brief. Further, appellants' arguments concerning the truth in lending issues are moot in light of this court's ruling on the dragnet clause. Finally, Mrs. Ballarino complains she was not given an opportunity to testify. The proposed evidence of Mary Ballarino related only to the dragnet issue as well.

The court below denied defendants' motion for a new trial or altered judgment, on the grounds that their counsel, as counsel for the debtor, was present during the entire trial, and could have raised any of these points at that time. The court further noted that its decision did not stray outside the issues presented by the parties.

This court agrees that such a motion, governed as it is by Rule 59 standards, should not be "a vehicle for raising issues or citing authorities a party could or should have presented prior to the court's ruling ... or for

---

1. "The typical features of a nominee trust are: (1) the names of the beneficiaries are filed with the trustees rather than being publicly disclosed; (2) a trustee may serve simultaneously as a beneficiary; (3) the trustees lack power to deal with the trust property except as directed by the beneficiaries; (4) a third party may rely on the disposition of trust property pursuant to any instrument signed by the trustees, without having to inquire as to whether the terms of the trust have been complied with; and (5) the beneficiaries may terminate the trust at any time, thereby receiving legal title to the trust property as tenants in common in proportion to their beneficial interest.... The third listed feature is the key to the nominee nature of the trust." *In re Grand Jury Subpoena*, 973 F.2d 45, 48 (1st Cir.1992) (citing Birnbaum, *The Nominee Trust in Massachusetts Real Estate Practice*, 60 Mass.L.Q. 364, 364–65 (1976)). *Roberts v. Roberts*, 419 Mass. 685, 646 N.E.2d 1061 (1995).

rehashing arguments previously made or for refuting the court's prior ruling." *In re Bank of New England Corp.*, 142 B.R. 584, 587 (D.Mass.1992). There is no demonstration of abuse of discretion.

### 3. *Remand*

This court nonetheless finds it difficult to issue a judgment without certain clarifications of fact and law. The amended order dated March 23, 1994 vacates the order dated March 9, 1994, although not the decision of the same date. The bankruptcy judge concluded:

> "A 50 percent interest in the property at 73 South Street, Franklin, Massachusetts, standing in the name of Richard A. Luccio, Trustee of the Octoped Trust, is property of the estate of the Debtor. The balance is the property of Mary N. Ballarino."

The bankruptcy court further found that "as a matter of law that the purported transfer from the Ballarinos to the trust was a sham." However, that transfer occurred in 1982—prior to the indebtedness to the Bank on the commercial loan. Even though it was a "sham" for the reasons stated by the court, the bankruptcy court must still make specific findings as to the claim of fraudulent conveyance with respect to the transfer from Robert Ballarino to his wife of his fifty percent interest in 1989. It is unclear whether further hearings are necessary on this point.

Moreover, in light of the ruling on the dragnet clause, the bankruptcy court ruled: "For purposes of determining the extent and priority of [the Bank's] lien rights, it is not necessary to consider the effect of the transfer of South Street to the trust or the subsequently obtained equitable lien."

Because the court is unclear whether there are problems involving the priority of the Bank's lien rights, and because there are no express findings with respect to the 1989 conveyance, this court vacates the judgment and remands for proceedings consistent with this opinion.

### ORDER

The final order appealed from, the United States Bankruptcy Court's amended order of March 23, 1994 (Chapter 7 Case No. 93– 11234–WCH, Adversary Proceeding No. 93– 1328), is **VACATED,** and the case is **REMANDED** for further proceedings consistent with this court's discussion of law.