Bohn, J.
INTRODUCTION
On June 26, 1996, this case was before the Court for trial, jury-waived. The issue at trial was whether a “dragnet clause” contained in a mortgage on a piece of property located on Hastings Street in Marlboro was intended by the parties to the mortgage to act as security for a later loan on a piece of property located on West Main Street in Marlboro.[1] For the reasons which follow, the Court orders that judgment be entered for the plaintiff in the amount of $85,200.12.
FINDINGS OF FACT
Based on the credible evidence, as well as all inferences reasonably to be drawn from that evidence, the following facts are found:
On March 30, 1988, Richard J. Budryk and Silva Y. Budryk executed a note to Marlboro Cooperative bank (“the bank”) in the amount of $32,800. This note was secured by a first mortgage granted to the bank by “Richard J. Budiyk and Silva Y. Budiyk, husband and wife, as tenants by the entirety” as mortgagor on real estate located at 23 Hastings Street, Marlboro, MA (“the Hastings Street mortgage”). In relevant part, the Hastings Street mortgage, in addition to providing that it was to secure the payment of the Hastings Street note, contained the following language, known as a “dragnet clause”: “also to secure the payment of all other indebtedness of the mortgagor to the mortgagee hereafter arising” (“the dragnet clause”).
The plaintiff and the bank agree that there is no evidence of unfairness or oppressiveness in the relationship between the bank and the Budryks, and that there is no evidence other than the document as to the intent of the bank or the Budryks in executing the Hastings Street mortgage.
On March 22, 1985, Richard J. Budryk and Silva Y. Budryk, individually and as trustees of Westside Realty Trust, executed an additional note to the bank in the amount of $130,000 (“the West Main Street note”). This note was secured by a first mortgage granted to the bank by “Richard J. Budryk and Silva Y. Budryk, Trustees of Westside Realty Trust” as mortgagor on real estate located at 214 West Main Street, Marlboro, MA (“the West Main Street mortgage"). The West Main Street mortgage makes no mention of the Hastings Street Mortgage.
On March 11, 1989, the Budryks granted the plaintiff a junior mortgage on the West Main Street property to secure payment of a loan. On March 20, 1989, the Budryks granted the plaintiff a junior mortgage on the Hastings Street property to secure payment of a second loan. On January 31, 1991, the plaintiff foreclosed its mortgages on both properties and became the owner of the properties subject to the bank’s mortgages.
In February 1991, the plaintiff ceased making monthly payments to the bank on the West Main Street note although payments continued to be made on the Hastings Street note; and, although plaintiff has offered to pay off the Hastings Street note, the bank subsequently placed both loans into default, believing that default on the West Main Street note also constituted a default on the Hastings Street note pursuant to the dragnet clause. The bank then commenced actions to foreclose on both properties.
The parties agree that the foreclosure of the West Main Street properly left a deficiency of over $44,000 on the West Main Street note. The parties also agree that foreclosure of the Hastings Street property, for which the bank was the successful bidder at $85,000, yielded a surplus of $43,869.28, excluding expenses of the foreclosure sale.
The plaintiff owed $31,799.88 on the Hastings Street note at the time of the bank’s foreclosure. Because the Hastings Street property was appraised at $117,000, the plaintiff had an equity of $85,200.12, raising the issue of whether the measure of damages, if the plaintiff prevails on the underlying issue of the applicability of the dragnet clause, should be measured by the amount of the surplus after foreclosure or the amount of the plaintiffs equity at the time of foreclosure.
DISCUSSION
A. The Applicability of the Dragnet Clause
The leading Massachusetts cases with respect to construing the scope of a dragnet clause are Everett Credit Union v. Allied Ambulance Services, Inc., 12 Mass.App.Ct. 343 (1981), and Financial Acceptance Corp. v. Garvey, 6 Mass.App.Ct. 610 (1978). In Everett, the court stated that dragnet clauses should be read narrowly when used oppressively or as a device for fraud. Everett, 12 Mass.App.Ct. at 347. In their Agreed *122 Statement of Facts, the parties concede that there is no evidence of unfairness or oppressiveness in the relationship between the bank and the Budryks, and that there is no evidence other than the document as Lo the intent of the bank or the Budiyks in executing the Hastings Street Mortgage. Furthermore, although the parties have not informed the court as to the purpose of the Westside Realty Trust, the bank makes no suggestion that the Budiyks, in taking out the West Main Street loan as trustees of that trust, were attempting to evade the dragnet clause. A concomitant principle to the Everett holding, which obviously envisions oppressiveness or fraud on the part of the mortgagee, would be that the Court, in the absence of any evidence of unfairness on the part of the mortgagor, should not construe the dragnet clause overly broadly. With this in mind, the Court holds that the dragnet clause should operate exactly as written; see Everett, 12 Mass.App.Ct. at 347; and that will be the principle which governs the analysis which follows.
The dragnet clause secures “indebtedness of the mortgagor to the mortgagee hereafter arising” (emphasis added), and the mortgagor is identified as “Richard J. Budryk and Silva Y. Budryk, husband and wife, as tenants by the entirety.” This envisions the Budryks as a single unit, an interpretation supported by the fact that the mortgage document repeatedly refers to the “mortgagor” and not “mortgagors.” Nothing in the West Main Street note or the West Main Street mortgage indicates that the West Main Street loan was taken out by the Budiyks as tenants by the entirety, or even that the properly securing the note was owned by the Budryks as tenants by the entirely. Nor does the bank offer evidence that the property was owned by the Budryks in that capacity, in which case an inference that the West Main Street loan was intended to be secured by the dragnet clause may perhaps be justified. Thus, it cannot be said that the dragnet clause covers the West Main Street note.
The Court’s decision is consistent with the Garvey court’s determination of the factors to be considered in determining whether a debt is secured by a dragnet clause: whether the debt is of the same general kind of those specifically secured or bears a sufficiently close relationship to the original indebtedness, and whether the mortgagee relied on the security in making the loan. See Garvey, 6 Mass.App.Ct. at 613. The Hastings Street loan was made to a married couple as tenants by the entirely, and the West Main Street loan was made to two individuals in their capacities as trustees of a realty trust. Unlike Garvey, where the court found two debts to be of the same general kind, although the mortgage containing the dragnet clause was signed by the debtor in his individual capacity and the later note was signed as trustee of a trust and as an endorser, see 6 Mass.App.Ct. at 614, in this case the dragnet clause is associated with debts of a unit— tenants by the entirety — and not of an individual. This distinction is bolstered by a recent decision of the United States District Court for the District of Massachusetts, In Re Ballarino, 180 B.R. 343. (D.Mass. 1995). In Ballarino, the court noted that in cases where the dragnet clause did not contain language specifically referring to other joint and individual debts as being covered by the mortgage, but rather referred to the mortgagors as a unit, courts have uniformly held that the individual debts of one of the joint mortgagors was not secured. See Ballarino, 180 B.R. at 347. In the present case, Richard Budryk may have incurred a debt individually by signing the West Main Street note in his individual capacity as well as his capacity as trustee of a realty trust, as might have Silva Budryk, but neither of these individual debts are secured by the dragnet clause in a mortgage referring to the Budryks as a unit.
Furthermore, unlike the Garvey case, where the later debt was part of the same course of business dealings as the earlier one, see Garvey, 6 Mass.App.Ct. at 614, there is no evidence in the present case that the West Main Street loan bears any relationship whatsoever to the Hastings Street mortgage.
The plaintiff points to the absence of any reference to the dragnet clause in the West Main Street note and the fact that the West Main Street note was secured by a standard mortgage as evidence that the bank did not rely on the dragnet clause in making the West Main Street loan. The Everett court stated that these facts are insufficient in themselves to find the dragnet clause inapplicable. See Everett, 12 Mass.App.Ct. at 347. This Court bases its decision not on these facts, but on its finding that the debtor on the West Main Street note was not the mortgagor of the Hastings Street property.
B. The Measure of Damages
The question remains as to the measure of damages to which the plaintiff is entitled as a result of the bank’s foreclosure of the Hastings Street property. The plaintiff argues that it is entitled to its lost equity of $85,200.12, which represents the difference between the appraised value of the Hastings Street property ($117,000), and the balance due on the Hastings Street mortgage at the time of the foreclosure ($31,799.88). The bank argues that damages should be limited to the surplus realized in the foreclosure sale, $43,869.28.
The bank relies on Goldman v. Damon, 272 Mass. 302 (1930), which held that upon a foreclosure sale the former owner of equity becomes entitled to any surplus of the amount received from the sale in excess of the amount due upon the obligation secured by the mortgage. Goldman, 272 Mass. at 305. The Goldman court stated that the amount bid at a foreclosure sale is the only criterion of the value of what was sold where the action is at law, and that by suing for a surplus, the former owner of equity affirms the validity of the sale so far as it concerns him. Id. at 305-06.
*123 Unfortunately for the bank, the Goldman holding applied to a valid sale, that is, one where foreclosure had been proper. See id. at 305. In the present case, the foreclosure was improper, as the plaintiff had continued making timely mortgage payments, and thus the mortgage was not in default. An action at law will lie for the wrongful execution of a power of sale in a mortgage where there has been no breach of any condition of the mortgage. Sandler v. Green, 287 Mass. 404, 407 (1934). See Cambridge Savings Bank v. Cronin, 289 Mass. 379, 381 (1935); Rogers v. Barnes, 169 Mass. 179, 185 (1897).
The plaintiff is entitled to its damages at law, which in this case is the amount of equity it lost as a result of the bank’s foreclosure and sale of the Hastings Street property. Thus, the plaintiffs are entitled to $85,200.12.
C. The 93A Claim
The Court finds that the bank’s foreclosure and sale of the Hastings Street property did not amount to an unfair or deceptive trade practice in violation of G.L.ch. 93, s. 2, and thus the plaintiff cannot recover attorneys fees or treble damages.
ORDER
It is therefore ORDERED that judgment be entered for the plaintiff in the amount of $85,200.12, and that the plaintiffs claim for treble damages under ch. 93A be dismissed with prejudice.

 In a March 9, 1994 decision [1 Mass. L. Rptr. 553], this Court (Fremont-Smith, J.) granted summary judgment for the plaintiffs on the issue of whether the dragnet clause secured a loan on a third piece of property located at Chestnut Street in Marlboro. Judge Fremont-Smith did not decide whether the dragnet clause secured the West Main Street loan, stating that the ambiguous nature of the Budryks’ signatures on the West Main Street note raised an issue of fact as to the parties’ intent.