**BRAE ASSET FUND, L.P. Appellant,**

v.

**Robert P. KELLY, Appellee.**

**In re Robert P. KELLY, Debtor.**

**Robert P. KELLY, Plaintiff,**

v.

**BRAE ASSET FUND, L.P., Defendant.**

No. CIV. A. 98–40034–REK.
No. 97–46107.
Adversary No. 97–4355.

United States District Court,
D. Massachusetts.

June 11, 1998.

Reneau J. Longoria, Doonan & Graves, Salem, MA, for Appellant.

Robert F. Casey, Jr., Robert F. Casey, Jr. P.C., Harvard, MA, for Appellee.

## Opinion

KEETON, District Judge.

This case is an appeal under 28 U.S.C. § 158(a) by the creditor-appellant, Brae Asset Fund, L.P., from certain final and interlocutory rulings and a judgment for the debtor-appellee, Robert P. Kelly, that the bankruptcy court, Queenan, B.J., ordered in the adversary proceeding cited in the caption.

This appeal concerns a "dragnet clause," or "after-acquired debt clause," in a residential mortgage and the authority of a bankruptcy court to declare ineffective a foreclosure sale executed by a creditor under the authority of a dragnet clause that the debtor-appellee contends: (1) cannot be interpreted to extend the security interest granted in the residential mortgage to a debt instrument on which a corporation, for which the debtor-appellee has signed a Guaranty, has defaulted, and (2) is unenforceable because it is against public policy. The bankruptcy court ordered summary judgment for the debtor-appellee.

For the reasons explained in this Opinion, the Judgment for Robert P. Kelly, Debtor–Plaintiff, is MODIFIED and AFFIRMED. The case is remanded to the bankruptcy court for such further proceedings, consistent with this judgment, as that court deems appropriate.

## I. Procedural and Factual Background

This appeal arises from the following sequence of events and rulings:

*January 5, 1978.* Appellee Robert P. Kelly enters into a Guaranty with Guaranty Bank & Trust Co. (Guaranty Bank) in

favor of Classic Trim, Inc. Classic Trim is a closely-held business corporation owned by Mr. Kelly's family. In the Guaranty, Mr. Kelly promises that he:

> unconditionally guarantee[s] to Bank, its successors and assigns, full and prompt payment at maturity of all present and future obligations of Borrower [Classic Trim] to Bank, including all renewals and extensions thereof or substitutions therefor.

Docket No. 19, Exh. A.

*April 20, 1979.* Mr. Kelly and Mrs. Patricia Kelly (his wife) execute and deliver a note and a mortgage (recorded) to the Bank in original principal amount of $60,000 (the 1979 Note and the 1979 Mortgage). The property at 164 Lindell Avenue, Leominster, MA 01453 acquired by the proceeds of this purchase-money note was held under common-law tenancy by the entirety.

The clause of the 1979 Mortgage that the Robert P. Kelly characterizes as a "dragnet clause" is the following:

> This mortgage is also to secure the payment of any and all future advances made by the mortgagee to the mortgagor whether dependent or independent of this transaction, including but without limiting the generality of the foregoing, all loans and interest thereon hereafter made by the mortgagee to the mortgagor, the proceeds of which are to be expended for paying insurance premiums, repairs, improvements or replacements to, or for taxes or other municipal liens, charges or assessments on, said premises.

Docket No. 19 at Exh. 8, Exh. C.

*May 18, 1982.* Classic Trim and Westminster Limited, deliver a note to the Bank evidencing debt of $21,587.22 (the 1982 Note).

*1983.* Classic Trim defaults on the 1982 Note.

*Unspecified time.* Guaranty Bank fails.

*Unspecified time.* Fleet Bank receives an assignment of the 1979 Note from the Federal Deposit Insurance Corporation (FDIC) after Guaranty Bank fails.

*July 25, 1985.* Appellant Brae Asset Fund (Brae) receives (and holds without recording) assignment of 1982 Note and 1979 Mortgage from the FDIC.

*August 18, 1985.* Brae records assignment of the 1979 Mortgage.

*April 7, 1997.* Foreclosure sale, under the 1979 Mortgage, of interests of Robert P. Kelly in 164 Lindell Avenue, Leominster, MA 01453 is completed. At this time, the Kellys are not in default of the 1979 Note.

*May 1997.* The Kellys default on the 1979 Note.

*July 1997.* Brae purchases 1979 Note from Fleet Bank.

*July 28, 1997.* Brae executes but does not record a Foreclosure Deed. The Foreclosure Deed provides in relevant part:

> Brae Asset Fund L.P. ... holder of a mortgage given by Robert P. Kelly and Patricia Kelly to Guaranty Bank and Trust Company, dated April 20, 1979 ... to James Baugham, Trustee and David Spiro, Trustee, of Brae Realty Trust, created by declaration of trust dated February 9, 1995 ... the real property ... at 164 Lindell Avenue .... The foregoing interest in this mortgage is subject to a note dated April 20, 1979 ... and is also subject to the rights, of Patricia A. Kelly.

Docket No. 19, Exh. 8 at Exh. F.

*September 3, 1997.* Robert P. Kelly declares his homestead under M.G.L. ch. 188, § 1 on the property subject to the 1979 Mortgage.

*September 4, 1997.* Robert P. Kelly files a voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code.

*September 18, 1997.* Brae records the Foreclosure Deed of July 28, 1997.

*October 15, 1997.* Debtor, Robert P. Kelly, files adversary complaint, dated as of October 9, 1997, to obtain an order:

(1) discharging the Debtors' obligation to Brae,

(2) voiding the foreclosure sale,

(3) voiding the dragnet clause, and

(4) voiding Brae's mortgage lien on the marital home.

Docket No. 19, Exh. 4 at 2.

*October 17, 1997.* Brae files Proof of Claim for $36,370.12.

*December 9, 1997.* Robert P. Kelly files with the bankruptcy court a Motion for Summary Judgment (Docket No. 19, Exh. 6).

*December 22, 1997.* Brae files an Opposition to Debtor's Motion for Summary Judgment and Cross–Motion for Summary Judgment (Docket No. 19, Exh. 8).

*January 27, 1998.* Bankruptcy Judge James F. Queenan conducts a hearing on Robert P. Kelly's motion for summary judgment and Brae's cross-motion for summary judgment. At that hearing, the bankruptcy court makes the following "findings and rulings":

All right, let me make some findings and rulings right now.

The question which I posed to counsel I think has been satisfactorily answered, that the—there is a claim to a homestead exemption claim here which I believe gives the debtor the standing to complain about this foreclosure. I agree that *D'Oench* has nothing to do with this. There's—we're not talking about oral defenses. We're talking about something that's—rights that spring or do not spring, based upon written documents.

I'm not impressed that foreclosure just ends someone's liability, a debtor's ability to—or a Trustee's ability to complain about the validity of the security agreement afterwards. There would be a problem, I suppose, if they were a bona fide purchaser for value, but we don't have a bona fide purchaser for value. We have a—we have the—a foreclosing party buying in, so we're not involved with rights of third parties.

The question is, is this so-called dragnet clause sufficient to—which is contained in the mortgage signed by the debtor and his wife—is it sufficient to include the debtor's obligation under the debtor's guarantee of the corporate obligation—the corporate loan—the loan obtained by the corporation? And I hold

that it is not. I think it clearly is not sufficient to cover that guarantee.

The dragnet—and I come to that conclusion for two reasons, really: One, the dragnet clause talks about a mortgage being security for future advances to the mortgagor. The mortgagor was the debtor and his wife, not just the debtor.

But I think more basically there is a second reason, and that is this: The future advance was not even [to] the debtor. It was to the debtor's corporation. There was no advance to the debtor, and I don't think this is being hypertechnical. Corporations are distinct legal entities from their stockholders. The advance was to the corporation. The debtor incurred an obligation in connection with that advance because of the debtor's guarantee, but that doesn't make the advance to the debtor, so the dragnet clause, I think, quite clearly simply does not apply.

I'll look at that other case of mine to see whether that might apply here or not, but in this ruling I'm not relying upon the decision that I gave concerning the validity of an execution lien.

So I'm declaring the mortgage-the mortgage foreclosure void because of-because the mortgage simply didn't secure the debt being foreclosed upon, and I'll issue a decree to that effect. Thank you.

Transcript of Hearing on January 27, 1998 at 26–27.

*January 28, 1998.* Clerk enters on the docket three orders that bankruptcy court made on January 27. In relevant part, these orders provided that:

*First:* "*Proceeding Memorandum/Order of Court,*" *Docket No. 15 of Adversary Proceeding No. 97–4355*

[# ]8 MOTION by Debtor, Plaintiff for Summary Judgment ... [is][g]ranted ... [and] "Findings and Conclusions Dictated at Close of Hearing Incorporated by Reference ...." DECISION SET OUT MORE FULLY BY COURT AS FOLLOWS:

The foreclosure sale of April 7, 1997 and the deed subsequently recorded in

September of 1997 are hereby declared void and of no legal effect.

Docket No. 19 at 15 (the Memorandum/Order of Court Granting Summary Judgment).

*Second:* "*Proceeding Memorandum/Order of Court*", *Docket No. 14 of Adversary Proceeding No. 97–4355*

[# ]10 CROSS MOTION by Defendant, Brae Asset Fund, L.P. for Summary Judgment .... [is] Denied .... [and] Findings and Conclusions Dictated at Close of Hearing Incorporated by Reference.

Docket No. 19 at 14 (the Memorandum/Order of Court Denying Cross–Motion).

*Third:* "*Proceeding Memorandum/Order of Court,*" *Docket No. 13 of Adversary Proceeding No. 97–4355*

[P]RE–TRIAL on Complaint to Determine Validity, Priority, Extent of a Lien or Other Interest in Property .... [is] Moot by reason of today's judgment on summary judgment motion.

Docket No. 19 at 13.

*February 6, 1998.* Brae files Notice of Appeal and elects appeal to district court.

## II. The Parties' Contentions on Appeal

Appellant Brae, on appeal, asks: (1) that this court reverse the judgment of the bankruptcy court in the Memorandum/Order of Court Granting Summary Judgment and the ruling (within that Memorandum/Order) allowing the debtor's motion for summary judgment on his adversary complaint (communicated to the parties both at the hearing and through the docketing of the Memorandum/Order of Court Granting Summary Judgment), (2) that this court reverse the ruling of the bankruptcy court denying Brae's cross-motion for summary judgment (communicated to the parties on the Memorandum/Order of Court Denying Cross–Motion), and (3) that this court rule that Brae is entitled, as a matter of law, to summary judgment on its cross-motion for summary judgment on the debtor's adversary complaint. The debtor, Robert P. Kelly, seeks affirmance.

Brae has made the following contentions in support of the appellate review that it seeks in this court:

*First.* Brae contends that the bankruptcy court did not have authority to adjudicate the effectiveness of the foreclosure of April 7, 1997 with respect to Robert P. Kelly's interests in the mortgaged property because the foreclosure was completed before Robert P. Kelly filed for bankruptcy. Brae argues that the debtor lost all rights in the property at the time of foreclosure, regardless of whether the instruments invoked by Brae in foreclosing did or did not lawfully authorize the foreclosure that purportedly was effected.

*Second.* Brae contends that Robert P. Kelly has no standing to challenge the enforceability or lawfulness of the "dragnet clause" that Brae contends it invoked (at least implicitly if not explicitly) in foreclosing. Brae argues that the "dragnet clause" of the 1979 Mortgage was unlawfully harmful, if at all, only to the interests of Mrs. Kelly, not Mr. Kelly, in the property, and that she is the only person who could have standing to challenge the clause.

*Third.* Brae contends that rules of laches, waiver and estoppel forbid Kelly from now contesting the lawfulness of the "dragnet clause" in the 1979 Mortgage.

*Fourth.* Brae contends that the judgment of the bankruptcy court was erroneous in light of the "*D'Oench, Duhme doctrine*" and the policies expressed by Congress in the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA). Also, more specifically, Brae contends that Robert P. Kelly has not exhausted his administrative remedies under FIRREA and that FIRREA preempts state law on claims against failed financial institutions.

Kelly, in response to these contentions, argues that the bankruptcy court's judgment should be affirmed for the following reasons:

*First.* The bankruptcy court has authority to determine the effectiveness of the fore-

closure of April 7, 1997 on the property interests of Mr. Kelly.

*Second.* The "dragnet clause" in the 1979 Mortgage that Brae invoked in foreclosing is unenforceable (determinable as a matter of law, on motion for summary judgment) because it is against public policy (citing *Foxborough Savings Bank v. Ballarino,* 180 B.R. 343 (D.Mass.1995)).

*Third.* It is determinable as a matter of law, on motion for summary judgment, that the terms of the after-acquired debt clause in the 1979 Mortgage do not support an interpretation that the mortgage provides security for debt such as the 1982 Note in which the borrower was a corporate entity and not the mortgagors or mortgagor.

### III. Standard of Review by District Court

■ The bankruptcy court's denial of Brae's cross-motion for summary judgment was an interlocutory order. It is reviewable in the District Court as a matter of discretion, not as a matter of right. 28 U.S.C. § 158(a); *In re G.S.F. Corp.,* 938 F.2d 1467, 1473 (1st Cir.1991).

■ A bankruptcy court's allowance of a summary judgment may be a final judgment, reviewable as a matter of right, or it may instead be interlocutory, and reviewable only as a matter of discretion. The determination as to which kind of ruling a ruling is in a particular instance depends on whether the summary "judgment" was indeed a final judgment of the entire adversary proceeding in which it was made, or at least of an identifiable part of the proceeding as to which a separate final judgment or other appealable order may be made.

■ A bankruptcy court may not allow summary judgment for a party if a genuine dispute of material fact remains in the case. F.R. Bankr.P. 7056; F.R. Civ. P. 56. On appeal, this court reviews the bankruptcy court's grant of summary judgment *de novo. Wyner v. North American Specialty Ins. Co.,* 78 F.3d 752, 754 (1st Cir.1996).

■ Under the law of this circuit, a court (and I conclude this rule applies to a bankruptcy court as well as a district court, when deciding a motion for summary judgment) may use a two-phase process in deciding a motion for summary judgment. Under that process, the movant first has to make a preliminary showing that no issue of material fact remains, and then the nonmovant must "demonstrate, through specific facts, that a trialworthy issue remains." *Cadle Co. v. Hayes,* 116 F.3d 957, 960 (1st Cir.1997). After a preliminary showing by the moving party, the burden shifts to the nonmovant to "produce evidence which would be admissible at trial to make the requisite issue of material fact." *Fragoso v. Lopez,* 991 F.2d 878, 887 (1st Cir.1993). If the nonmovant is unable to proffer such evidence to the court, judgment as a matter of law may be ordered because the nonmovant has failed to show that a genuine dispute exists as to any material fact.

■ In reviewing the bankruptcy court's decision in which the bankruptcy court may have acted under the authority of the *Hayes* and *Fragoso* decisions, the district court reviews *de novo* as explained in *Wyner* in relation to issues of law, and for abuse of discretion in relation to whether the bankruptcy court abused discretion with respect to procedural issues such as notice and opportunity for a party opposing summary judgment to present admissible evidence to meet its burden. In other words, the district court reviews the bankruptcy court's decision under the same standards of review as those the Court of Appeals invokes in reviewing a district court's decision on a motion for summary judgment filed in the district court.

### IV. Robert P. Kelly's Standing; Bankruptcy Court's Authority to Decide

Was the event of April 7, 1997 a foreclosure that effected a change in Robert P. Kelly's interests in 164 Lindell Avenue, Leominster, MA? If so, what effect did it have?

Did the foreclosure deed of July 28, 1997 effect a change in Robert P. Kelly's interests? If so, what effect did it have?

Events in the contest called "baseball" are neither "foul ball" nor "hit," neither "ball"

nor "strike," until an authorized decisionmaker for the contest makes and announces a decision. A statement by another observer about what one of those events was is simply a statement of an observer without authority to decide.

Similarly, the transactions of April 7, 1997 (foreclosure sale) and July 28, 1997 (foreclosure deed) have no decided legal effect until some authorized decisionmaker makes a decision. The legal effect, if any, remains undecided until an authorized decision is made.

■ Thus, the claims of Patricia A. Kelly and Robert P. Kelly that their homestead interests under Massachusetts law were not terminated by the events of April 7 and July 28, 1997 remained unadjudicated when Robert P. Kelly filed his voluntary petition in bankruptcy on September 4, 1997. Also, no adjudication had occurred with respect to whatever legally recognizable interest, if any, Robert P. Kelly had in the property at 164 Lindell Avenue, Leominster MA 01453, beyond the homestead interests, as a result of the events of April 7 and July 28, 1997. When Robert P. Kelly filed his Chapter 7 petition, he brought into the bankruptcy estate (subject to all the terms of bankruptcy law as applied in this bankruptcy proceeding by authorized decisionmakers) whatever legally recognizable interests, if any, he had in the 164 Lindell Avenue property.

■ In view of these incontrovertible circumstances, the debtor in this case has standing to request an order of the bankruptcy court declaring what his interest is, if a genuine dispute exists about it. And the bankruptcy court has jurisdiction to hear and decide that request for declaratory relief because it concerns a claim allegedly within the estate of the debtor in a Chapter 7 proceeding before the bankruptcy court. This is a proposition so obvious and inherent in the bankruptcy system created by federal legislation that it is not surprising that it is difficult to find precedent directly on point. If decisions on point exist, the parties have not located and cited them either in their submissions before the bankruptcy court, to the extent included in the record placed before this court on appeal, or in their briefs before this court. All of the cases cited involve circumstances distinguishable from those of record in this appeal.

## V. The Merits

### A. Introduction

The bankruptcy court was not as explicit as it could have been in explaining its reasons for allowing the debtor's motion for summary judgment. As explained in Part I above, the bankruptcy court did not issue an opinion or memorandum explaining the determinations; rather the bankruptcy court incorporated into the Memorandum/Order of Court Granting Summary Judgment, by reference, the statements made orally on the record.

The language used by the bankruptcy court in stating its reasons for allowing summary judgment was not in the idiom customary for precise explanation of a ruling on a motion for summary judgment. The bankruptcy court used the term "findings" in explaining its decision to grant summary judgment for Robert P. Kelly in the adversary proceeding. A court, in deciding a motion for summary judgment, cannot make "findings" of fact on factual issues genuinely in dispute. Before reversing on this ground, however, a reviewing court must take account of the fact that many trial and appellate opinions refer to a determination that the party opposing summary judgment has failed to proffer admissible evidence showing a particular factual issue to be genuinely in dispute as a "finding," even though it is in essence a ruling "as a matter of law" that this particular issue is not genuinely in dispute.

Is this, in essence, the nature of enough of the bankruptcy court's "findings" in this instance to support affirmance of the bankruptcy court's allowance of summary judgment, or at least of some part of it?

■ In deciding how to answer this question, a reviewing court must also take account of the well-established rule that if the reviewing court determines, in its *de novo* review of issues of law, that the summary judgment granted below was appropriate for reasons different from those stated by the

lower court, it is appropriate to affirm the judgment, explaining its reasons for doing so.

If, on the other hand, the reviewing court determines that a genuine dispute of material fact remains as to each possible ground for summary judgment, the reviewing court must vacate the order allowing the motion for summary judgment and must vacate any final judgment entered by the clerk on the docket in accordance with the order. The appropriate disposition, in either event, may be to remand the case to the bankruptcy court with directions to conduct such further proceedings as it may deem appropriate, consistent with the opinion and order of the reviewing court.

In light of the record before this court, this court has identified two alternative determinations as possible grounds for allowing the debtor's motion for summary judgment.

The first possibility is that no genuine dispute of material fact remains with respect to a determination that the 1979 Mortgage *must be interpreted* as *not* granting Brae a security interest in 164 Lindell Avenue to secure debt owing under the 1982 Note (Robert P. Kelly's Third Contention).

The second possibility is that no genuine dispute of material fact remains with respect to a determination that the 1979 Mortgage is *unenforceable* because the "dragnet clause" is against public policy (Robert P. Kelly's Second Contention).

I conclude that, if I reach either of these determinations, I should affirm the judgment of the bankruptcy court, even if I do so on reasoning different from that of the bankruptcy court.

**B. Interpretation of the Dragnet Clause**

The parties disagree on whether the language of the dragnet clause, properly interpreted, means that Robert P. Kelly's personal Guaranty applies to money advanced in return for the 1982 Note. A generally applicable rule of interpretation is stated in *Wyner.*

> Whether or not contractual ambiguity exists is generally a matter of law for the court. If such ambiguity is found, then an argument between parties about the meaning of an ambiguous contract is typically an argument about a material fact, and summary judgment is normally unwarranted unless the extrinsic evidence presented about the parties' intended meaning is so one-sided that no reasonable person could decide to the contrary.

*Id.,* 78 F.3d at 754.

In this case, the disagreements, precisely identified, are as to: (1) whether the language of the dragnet clause requires that *both* Mr. and Ms. Kelly be the debtors under an instrument for the debt incurred under that instrument to be secured by the mortgage; and (2) whether the language of the dragnet clause in the 1979 Mortgage supports a determination that an obligation of Robert P. Kelly to respond for Classic Trim's failure to repay the 1982 Note, which arises under his Guaranty of Classic Trim's obligations, was a future advance by Guaranty to Mr. Kelly for purposes of the 1979 Mortgage's dragnet clause.

On the record before this court, neither the language of the dragnet clause, as set forth in Part II above, nor the language of any other applicable instrument or agreement can be determined, as a matter of law, to have provided a decisive answer to this dispute.

For these reasons, I conclude that I cannot decide that no genuine dispute of material fact remains about the meaning of the dragnet clause in the 1979 Mortgage.

**C. Enforceability of the Dragnet Clause and Its Applicability to Advances under the 1982 Note**

Even if a genuine dispute of material fact remains as to the precise meaning of the dragnet clause, summary judgment is appropriate if, as a matter of law, that clause, even if interpreted in favor of Brae, is not enforceable because it is against public policy in the circumstances of this case.

Does the possibility of a genuine dispute of material fact also remain as to whether the dragnet clause in the 1979 Mortgage is enforceable as to the 1982 advances?

A dragnet clause will not be considered to include future advances [1] unless the facts reveal that said advances are of the same

kind and quality or relate to the original transaction, *or,* [2] unless the new obligation incurred refers [to the mortgage] *or was contemplated by the parties to have said mortgage be security therefore.*

*Foxborough Savings Bank v. Ballarino,* 180 B.R. 343, 346 (D.Mass.1995) (citations and ellipses omitted; emphasis added).

First, I conclude that the after-acquired debt clause in the 1979 Mortgage quoted in Part I above is a "dragnet clause" for purposes of *Ballarino* and the authority cited and discussed therein. For that reason, the dragnet clause "will not be considered to include the future advances" at issue here (the advances under the 1982 Note) unless, in response to Kelly's motion for summary judgment, Brae proffers admissible evidence that, if credited, would reasonably support a determination (1) that the 1982 Note related to the 1979 Note, (2) that the parties made reference in the 1982 Note to the 1979 Mortgage, or (3) that parties to the 1982 Note contemplated that the 1979 Mortgage was security for the advances under the 1982 Note.

■ For the reasons explained below, I conclude that Brae has failed to meet its burden to proffer admissible evidence that would be sufficient to support a determination in its favor as to any of these three questions.

The record before the bankruptcy court and the record before this court do not contain any extrinsic evidence, in addition to the 1982 Note itself, that would tend to support an inference about the manifested intentions of the parties in adopting the dragnet clause in the 1979 Mortgage.

Brae has failed to proffer any evidence that would support a determination that the 1982 Note "related to" the 1979 Note or the 1979 Mortgage. It is undisputed that the 1979 Note was one as to which Robert P. Kelly was himself a borrower, along with his wife. In contrast, the borrower at the time of the 1982 Note was a corporate entity, and neither Robert P. Kelly nor his wife. In addition, the proceeds from the loans under the 1979 Note went to the purchase of Robert P. Kelly's and Patricia Kelly's residence, and not to the treasury of Classic Trim, as the proceeds from the loans under the 1982 Note did. The parties to the 1979 Note were substantially different from the parties to the 1982 Note and the proceeds from each note went to different uses by separate persons. I thus conclude, as a matter of law, that the 1982 Note did not "relate" to the 1979 Note or the 1979 Mortgage.

I also conclude that the terms of the 1982 Note did not refer to the 1979 Mortgage.

Lastly, Brae has failed to proffer admissible evidence that may reasonably support a determination that the parties contemplated the 1982 Note to be secured by the 1979 Mortgage.

The level of specificity of the 1982 Note with respect to other security stands in stark contrast with the omission of any mention of the 1979 Mortgage. The 1982 Note refers only to security interests or mortgages granted by the "the maker(s)" (Classic Trim and Westminster) to Guaranty Bank.

This note, if secured by any property other than or in addition to any collateral specifically pledged, is secured by a mortgage or security agreement between said Bank and the maker(s), and the holder is entitled to the benefits of the security described therein.

Docket No. 19, Exh. 8 at Exh. D. Robert P. Kelly signed the 1982 Note only in his capacity as agent of Classic Trim. Robert P. Kelly is not a "maker" of the 1982 Note.

In addition, under the caption "ADDITIONAL PROVISIONS," the 1982 Note states:

Interest Rate 15%. Secured by Loan and Security Agreement of Classic Time, Inc. AND Loan and Security Agreement of Westminster Limited, Inc.

*Id.* The parties to the 1982 Note specified that security interests or mortgages granted by Classic Trim to Guaranty Bank secured the 1982 Note, yet there was no reference in the 1982 Note to the 1979 Mortgage or to Robert P. Kelly's Guaranty. These provisions reasonably support only an inference that the parties did not contemplate the 1982 Note to be secured by the 1979 Mortgage.

Brae's contention, in the alternative, that the 1982 Note was ambiguous as to the parties' contemplations regarding the securing of the debt under that instrument with the 1979 Mortgage leads to a dead end because Brae has failed to proffer any extrinsic evidence that could support a determination that the parties contemplated the 1982 Note to be secured by the 1979 Mortgage.

The judgment of the bankruptcy court will be modified to make clear that no adjudication has been made that all of the reasons and "findings" stated by the bankruptcy court are affirmed. As modified, the Order from which appeal was taken will be affirmed.

### ORDER

For the foregoing reasons, it is ORDERED:

The Bankruptcy Court's order of January 27, 1998, on Debtor's Motion for Summary Judgment in the Adversary Proceeding is modified by narrowing the scope of the Judgment in the Adversary Proceeding to be as follows:

The foreclosure sale of April 7, 1997, at which the foreclosing party (Brae) bought in, did not have the legal effect of terminating the rights of Patricia A. Kelly and Robert P. Kelly in the real property (including improvements) at 164 Lindell Avenue, Leominster MA 01453.

As so modified, the Summary Judgment for Robert P. Kelly, Debtor–Plaintiff, is AFFIRMED. The case is remanded to the bankruptcy court for such further proceedings, consistent with this judgment, as that court deems appropriate.